## STATE v. DISTRICT COURT OF EIGHTH JUD. DIST.*
(No. 1311; August 11, 1925; 238 Pac. 545.)

INTOXICATING LIQUORS—COURTS—JURISDICTION—WORDS AND PHRASES
— JUDGMENT — COLLATERAL   ATTACK — PLEADING — PROCEDURE —
SEARCH AND SEIZURE.

1.   Chief of police, as agent of city, instituting liquor prosecu-
     tion, *held* subject to orders of district court in proceed-
     ing for return of liquor illegally seized.

2.   District court, as court of superior and general jurisdic-
     tion, had jurisdiction of parties and subject-matter in pro-
     ceeding for return of liquor illegally seized under Sess.
     Laws 1921, c. 117, § 25.

3.   "Jurisdiction" is the power of a court to render a par-
     ticular judgment.

4.   Requisites of jurisdiction consist of both facts 'and law.

5.   Court, competently organized, must be authorized by law
     to take cognizance of the class of cases to which proceed-
     ing before it may belong.

6.   "Power" is synonymous with authority or right.

7.   Where it is clear that a court has no power under the law
     to render a particular judgment under any circumstances,
     the judgment is void, and subject to collateral attack.

8.   Where a court enters a judgment or awards relief clearly
     beyond the prayer of the complaint or the scope of its
     allegations, the excessive relief is, at least in default
     cases, void and open to collateral attack, and this rule is
     not inconsistent with rule that jurisdiction of a court
     does not depend on sufficiency of a pleading.

9.   A judgment cannot, ordinarily, be attacked collaterally
     because the complaint did not state facts sufficient to con-
     stitute a cause of action, if it contains sufficient matter
     to challenge the attention of the court as to its merits.

10.  For court to obtain jurisdiction of personal actions, due
     mode of procedure must exist.

11.  The mode of procedure, after jurisdiction of the person is
     obtained, must be in accordance with law, and a clear
     violation thereof, if fundamental, vitiates the judgment,
     subjecting it to collateral attack, where that is apparent
     on the face of the record proper.

12.  If the measure of the court's authority depends on and is
     limited by statute, a judgment that by the face of the
     record proper is shown not to be in substantial compliance
     with mandatory provisions of the statute, or contrary to

the limitations or conditions precedent therein expressed, is void, and subject to collateral attack.

13.  A court of superior and general common-law jurisdiction, as are district courts, whose powers are only added to or limited by statute, has authority, if jurisdiction exists of the person and of the action, to decide as against a collateral attack, both questions of law as well as of fact that may arise in the particular case, unless the rendition of the judgment clearly violates one of the rules for the determination of jurisdictional defects.

14.  Judgment ordering chief of police to return to respondent intoxicating liquor illegally seized from him *held* not subject to collateral attack, whether or not the judgment was erroneous under Sess. Laws 1921, c. 117.

15.  Statutes governing the return of liquor are rules of substantive law, by which court should decide, rather than limitations on its power.

*See Headnotes (1) 33 C. J. p. 691 (Anno); (2) 33 C. J. p. 691 (Anno); (3) 15 C. J. p. 725 (Anno);(4) 15 C. J. p. 734 (Anno) (5) 15 C. J. p. 734; (6) 31 Cyc. p. 1031; (7) 33 C. J. p. 1077; 34 C. J. p. 531; (8) 34 C. J. p. 154; (9) 33 C. J. p. 1133, 34 C. J. pp. 154, 560; (10) 15 C. J. p. 797, 33 C. J. p. 1074; (11) 34 C. J. p. 561; (12) 34 C. J. pp. 531, 532; (13) 34 C. J. p. 555; (14) 33 C. J. p. 691 (Anno); (15) 33 C. J p. 691 (Anno).

Original proceeding in prohibition by the state on the relation of Bert S. Yohe against the District Court of the 8th Judicial District in and for the County of Natrona, and Bryant S. Cromer as Judge thereof.  Heard on motion to quash the alternative writ issued.

*David J. Howell*, Attorney General and *E. E. Enterline* for the motion.

The police court had jurisdiction; Secs. 1902, 1909, 1915, 1916 C. S.; 7419 C. S. governs appeals therefrom; petition for the writ is insufficient, no objections being made below; State v. Dist. Court (Wyo.) 227 Pac. 378; petitioner's appeal bond did not stay execution; 6413 C. S.; the Dist. Court had jurisdiction to make the order complained of and enforce it; the order was res adjudicata until reversed; Murdica v. State, 22 Wyo. 196; the appellant court will not inquire into the merits of the contempt order; 13 C. J. 80;

O'Brien v. People (Ill.) 75 N. E. 108; 129 N. W. 400; Croft
v. Croft (Wash.) 138 Pac. 6; State v. Dist. Court (Mont.)
79 Pac. 319; the Dist. Court had jurisdiction to hear and de-
termine the petition for return of property; State v. Peter-
son, 27 Wyo. 185; State v. George, 231 Pac. 683; petitioner
had no right to deliver the liquor to successor in office; Ex
Parte Kellogg (Cal.) 30 Pac. 1030; Burnett v. State (Okla.)
129 Pac. 1110; liquor unlawfully seized will be ordered re-
turned even though contraband; McFadden on Prohibition,
Secs. 197-200 and cases cited; petitioner resists the author-
ity of the court on the ground that he is an agent of the City
of Casper; however property unlawfully seized must be re-
turned; State v. Peterson, supra; State v. George, supra;
defendant should not be prohibited from proceeding against
the relator for a violation of its order made on September
6, 1924.

*R. M. Boeke* and *Kenneth W. McDonald* contra.

Intoxicating liquors are contraband and their possession
is unlawful until proven lawful; Laws 1921 Chap. 117;
Secs. 25-35; State v. Kieffer, S. D. 196 N. W. 967; U. S.
v. Jensen, 291 Fed. 668; U. S. v. Deiadus, 289 Fed. 637; U.
S. v. Kaplan, 286 Fed. 963; People v. Pkgs. of Whiskey
(N. Y.) 142 N. E. 298; State v. Pluth, (Minn.) 195 N. W.
789; Com. v. Wilkins (Mass.) 138 N. E. 11; Hall v. Com.
(Va.) 121 S. E. 154; Rosanski v. State, (Ohio) 140 N. E.
370; Bank v. State, 24 A. L. R. 1359; People v. Mayen
(Calif.) 205 Pac. 435; Voorhies v. U. S. 299 Fed. 275; U. S.
v. Alexander, 278 Fed. 308; U. S. v. Cararota, 278 Fed. 388;
City v. Walser, 187 N. W. 821; U. S. v. Fenton, 268 Fed.
221; Blakemore on Prohibition, (2nd Ed. 1925) 501; juris-
diction is never waived; 15 R. C. L. 482; in re Rosenheim,
23 Pac. 372; Blanchard v. Bryan, 200 Pac. 444; Bank v.
Steinhoff, 11 Wyo. 290; the writ will issue even where juris-
diction of the person and subject matter exists, if there be
no authority for issuance of the contempt order; Burke v.
Court (Calif.) 93 Pac. 1058; Ruggles v. Court (Calif.) 37

Pac. 211; Ordman v. Ball (Ga.) 48 S. E. 383; State v. Wedge, 24 Minn. 150; People v. Carrington, (Utah) 17 Pac. 735; State v. Co., 72 N. W. 193; State v. Co. (Wash.) 71 Pac. 1095; Nichols v. Judge (Mich.) 89 N. W. 691; a writ is used frequently to settle matters of jurisdiction pertaining to liquor law violations; Hansen v. Dist. Court (Mont.) 233 Pac. 126; State v. Dist. Court, (Mont.) 232 Pac. 201; the Dist. Court is without jurisdiction over the person of the Chief of Police, he not being an officer of the court, and never having been before the court; Lewis v. McCarthy, 274 Fed. 496; In re Shue, 199 Fed. 282; the order being void cannot be made the basis for contempt proceedings; in Re Letcher, 190 S. W. 19; State v. Court, 202 Pac. 575; State v. LaFollette, 196 Pac. 412; Holbrook v. Co., 109 S. E. 164; Ark. Co. v. Lubers, 212 Pac. 848; In re Meade, 190 N. W. 235; Rudd v. Rudd, 214 S. W. 791.

BLUME, Justice.

This is an original proceeding in this court for a writ of prohibition. The facts are briefly as follows:

On March 27th, 1924, the relator herein, then and until sometime in 1925 chief of police of the city of Casper, after making search of the basement of a store building occupied by one R. J. Fuchs, and seizing intoxicating liquors therein, arrested said Fuchs for violating a city ordinance against possession of such liquors. The liquor seized consisted of rum, whiskey and wine, seemingly of good quality. When it was acquired by Fuchs does not appear. On April 1, of the same year, Fuchs was found guilty of violating said ordinance and was fined $100.00. From this judgment of the police court of said city, he appealed to the district court, as permitted by law. On June 21, 1924 Fuchs filed in said district court his petition for the return of said liquor so seized and for the suppression of evidence, setting forth among other things that applicant occupied the first floor of said store building to conduct the business of selling ladies' wearing apparel, and the basement thereof for storing

goods used in connection with said business and to store personal property belonging to himself and family, and that said liquor, naming it, was kept in a trunk in said basement from which it was unlawfully seized by said chief of police under a void search warrant. To said petition so filed the plaintiff in said criminal case, the city of Casper, demurred. The demurrer being overruled, said plaintiff filed an answer, resisting said petition, alleging that said liquor was contraband, asking that the petition be dismissed and for such other and further relief as to the court would seem proper. The matter came on for hearing before said District Court and a judgment was entered for the suppression of evidence and for the return of said liquor to said Fuchs. An appeal was attempted to be taken from said judgment, but the attempt was abandoned. Said judgment not having been complied with, said Fuchs, on November 5, 1924, filed an affidavit in said court asking that said relator be cited to show cause why he should not be found guilty and punished as and for contempt of court for refusing to obey the order of the court directing the return of said liquor. Citation was accordingly issued and served upon relator. To said proceeding the city of Casper appeared, demurring to said affidavit, and filing an answer, after such demurrer had been overruled. Said relator also appeared, for the special purpose of challenging the jurisdiction of the court, among other reasons because said court had no jurisdiction over him as chief of police of said city, and because said court had no jurisdiction ''over the intoxicating liquor which is the subject matter in controversy.'' The objections so raised by relator were overruled on March 25, 1925, and he was given ten days in which to answer. Further time was, on his application, subsequently given. Before the expiration thereof relator filed in this court his petition for a writ of prohibition to restrain said court and the judge thereof from entertaining, hearing or passing upon any further questions pertaining to said contempt proceeding. An alternative writ having been issued by two of the justices of

this court, the respondent appeared and filed a motion to quash said alternative writ. The case was fully argued by counsel for both sides and submitted to the court. It is admitted herein by counsel for relator that the seizure of said liquor was unlawful because made under a search warrant that was void, and no question is raised as to the order of suppression of evidence. Two main points only are argued on behalf of relator: First, that said relator, chief of police of the city of Casper, was not an officer of the district court, and hence not subject to the orders of that court; second, that said intoxicating liquor was, as shown by the face of the proceedings leading up to the judgment ordering the return thereof, contraband under the statute, being kept in a place other than the home of Fuchs; that hence the court had no authority to order its return and its judgment is for that reason totally null and void, which may be collaterally attacked and upon which no contempt proceedings can be based. Cases are cited to the effect that a court must have "jurisdiction to render the particular judgment" in question, and it is claimed that the absence of such jurisdiction is clearly shown. Counsel appearing for respondent contend that the judgment of said court above mentioned is at most voidable and not void, and hence cannot be attacked collaterally, as is sought to be done herein, and counsel appearing for respondent other than the Attorney General, further contend that inasmuch as the said liquors were seized unlawfully, under a void search warrant, it was not only the right but also the duty of the court to order its return.

1. We cannot sustain the contention of counsel for relator that the chief of police of the city of Casper was not subject to the orders of the district court in the proceeding for the return of the liquor in question, because he was not an officer of that court. The case was commenced in the police court of the city of Casper for violation of an ordinance of the city. Such cases are prosecuted as criminal actions. Appeals are allowed to the district court, where the

case is tried de novo. The chief of police was simply the agent of one of the parties to the action, and as such was subject to the proper orders of the court as to such a case in the same manner as the sheriff would have been in a criminal case originally commenced in that court. He had the property in question in his possession; he was the representative of his principal in connection with it, and his principal was properly reached through him. That seems to be the only reasonable position. Cases from federal courts holding that such courts have no authority over state or city officers in like cases are clearly distinguishable.

2. Relator contends that the court had no right to order the liquor returned because it was contraband. In State v. Romano, decided along with State v. Peterson, 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284, it does not appear whether the liquor unlawfully seized was taken from a home or from some other place. Nevertheless, the court held that it was the duty of the trial court to order its return, notwithstanding that section 7, c. 25, Session Laws 1919, then in force, declared "all intoxicating liquor unlawfully manufactured, possessed, transported or labelled are contraband," a provision which seems to be much stronger than, or at least as strong as, section 25, c. 117, Session Laws of 1921, covering the same subject. McFadden on Prohibition, sec. 117, states that "when the seizure is unlawful and unconstitutional, the liquor seized must be returned."

It is not necessary to consider the point under consideration in its extreme aspects, when return is demanded of property which universal consent and the law refuse to recognize as legitimate under any circumstances. Refusal to order the return of certain kinds of property would likely be an incentive and encouragement to continued violation of the constitutional guaranties against unlawful search and seizure, while that would not be true in case of refusal to order the return of a different kind of property and it is not improbable that such fact should be considered in determining the course that a court should pursue. However,

though the Romano case seems to settle the point, it is not necessary in this case to decide whether the court erred in ordering the liquor returned, and we refrain from doing so, but shall pass directly to the main question in the case, namely whether, assuming the order of return to have been erroneous, the error was jurisdictional. The question of jurisdiction arises frequently, and hence is, at this stage of the development of law in this state, worthy of careful discussion. We should state at the outset that the district court is a court of superior and general jurisdiction, and that there can be no question, that it had jurisdiction of the parties and of the general class of cases to which the proceedings in question belong.

3. There has undoubtedly been a tendency among the courts to enlarge the meaning of "jurisdiction." See 19 Central Law Journal 102, "The Modern Idea of Jurisdiction," and 47 American Law Review 516, "A Definition of Jurisdiction." In United States v. Arredondo, 6 Pet. 691, the Supreme Court of the United States defined the term as "the power to hear and determine." And accordingly many courts have stated, and still state, that a judgment rendered by a court having jurisdiction of the parties and the subject matter is not void and not subject to collateral attack. 34 C. J. 511. The term jurisdiction of the subject matter is generally understood as jurisdiction of the general class of cases to which the proceedings in question belong. 15 C. J. 734. The foregoing definition was, however, found inadequate. A case must be coram judice. A court cannot act sua sponte, except in some cases of contempt. Hence Black, in his work on Judgments, sec. 242, states that there are three essentials to jurisdiction: "First, the court must have cognizance of the class of cases to which the one to be adjudged belongs. Second, the parties must be present. And third, the point decided must be, in substance and effect, within the issues." To the same effect see 15 C. J. 734. In Windsor v. McVeigh, 93 U. S. 274, 23 L. ed. 914, it was said that "though the court may possess juris-

diction of a cause, of the subject matter and of the parties, it is still limited in its mode of procedure and in the extent and character of its judgments." This statement has often been repeated, as in Anthony v. Kasey, 83 Va. 338, 5 S. E. 176, 5 Am. St. Rep. 277, and Armstrong v. Obucino, 300 Ill. 140, 133 N. E. 58. Later, in Ex parte Reed, 100 U. S. 13, 25 L. ed. 538, the Supreme Court of the United States defined jurisdiction as "the power to hear and determine and *give the judgment rendered.*" While some of the courts, like those of Missouri, have been satisfied in simply adopting this definition, it has given rise to oft-repeated statements that the three essentials of jurisdiction are (1) jurisdiction of the person, (2) jurisdiction of the subject matter, and (3) jurisdiction to render the particular judgment or (its equivalent) to give the specific relief granted: 33 C. J. 1076; 34 C. J. 531; Freeman on Judgments (5th Ed.) sec. 354. It is apparent, however, that here is simply a reasoning from the particular to the general. The first two essentials mentioned are, in the foregoing enumeration, simply surplusage and are merely some of the requisites of the third, for, plainly a court may not have power to render a particular judgment because of want of jurisdiction of the person or the subject matter, just as much as because of excess of jurisdiction or usurpation of authority—using the latter terms for all lack of jurisdiction not embraced in the two former essentials. In fact the phrase "to hear and determine" is surplusage, for determination is necessarily embraced in the rendition of a judgment. So is the hearing, unless understood as including an opportunity for the defendant to be heard, in which case it is but another of the essentials to render the particular judgment, and may be considered, as in Windsor v. McVeigh, supra, as a part of the requisites of jurisdiction of the person. Hence jurisdiction may be defined, if we want to give a definition, as the power to render a particular judgment. But that does not give us the essentials or requisites for that power, which is a different proposition. And while Van Fleet, in his work

on Collateral Attack truly enough says "that the great
point in any science is to generalize," we fear that the defi-
nition does not, ordinarily, get us far in the practical ad-
ministration of the ever-widening field of law, and too strict
a reliance thereon is apt to mislead us. The requisites of
jurisdiction consist of both facts and law. Thus some sort
of pleading must exist, and the judgment must not go out-
side of the issues; the parties must be brought before the
court. A record on appeal must be filed within a certain
time. These are illustrations of requisites of facts. That
a court, competently organized, must be authorized by law
to take cognizance of the class of cases to which the proceed-
ings in question belong, is the outstanding requisite of law.
While there are other requisites of that sort, for instance a
law creating the court, the claim of counsel for relator is
broad and sweeping. Their position, in its ultimate analy-
sis, is that the "power to render a particular judgment,"
means that the judgment must be in accordance with law;
that when the face of the record shows that the decision of
the case was erroneous as a matter of law, it is necessarily
totally void and subject to collateral attack. In other words,
the claim appears to be that an erroneous decision in a case
on a point of law that is prejudicial to the parties, necessarily
either deprives the court of power to proceed further in the
case, if the point arises early in the proceeding, or is the
equivalent of excess of jurisdiction if the error is one in the
final decision, as in the case at bar. That the definition of
jurisdiction above given, and frequently mentioned as one
of the "essentials" thereof, may bear that meaning is not,
perhaps, to be denied. Power is synonymous with authority,
or right; and it may be argued that the "right" to give a
particular judgment depends upon the law, and that if it is
not in accordance with law, it is necessarily unlawful, and
being unlawful, it is void. Such result follows, of course,
in case of appeal where the reviewing court finds the judg-
ment unlawful. That, however, is a narrow construction of
the word "power" or "right," and assumes that the re-

viewing court—using that term in its broadest sense—has the only right to say what is lawful, ignoring the fact that the court rendering the judgment is called upon in every case to determine that itself, and if it has no power to do so, except correctly, as determined by the reviewing court, it has merely the shadow thereof. In Chase v. Christianson, 41 Cal. 253, cited with approval in Hagerman v. Sutton, 91 Mo. 519, 530, 4 S. W. 73-77, it is said:

"It is not the particular decision given which makes up jurisdiction, but it is the authority to decide the question at all."

It must be admitted that there has been a tendency for courts to lean toward the theory above mentioned, particularly in criminal cases, and cases coming before courts not of superior and general jurisdiction, but in considering the subject, we should not overlook the fact, at least in cases not involving the life or liberty of men, that for courts to permit their decisions to be evaded or disregarded for insufficient excuse, or in disregard of the regular modes of review provided by law, would tend to disrupt the administration of justice and bring courts into disrepute; that public policy requires that a term be put to litigation, and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. Freeman, supra, sec. 305; Head v. Daniels, 38 Kan.1, 15 Pac. 911.

While it is said in 15 R. C. L. 845 that the jurisdictional defects in proceedings which may render a judgment void on collateral attack are countless and varied, and while Mr. Freeman (Freeman, supra, sec. 354, note 23 A. S. R. 115) professed his inability to find a test for all cases in which a court would be held to have acted in excess of jurisdiction, it may be well to analyze at least a number of the cases which have stated that a court must have jurisdiction to "render the particular judgment," and a few others besides,

and group them, as near as possible, into convenient classes, so as to arrive at a better understanding of what the courts have meant by the phraseology mentioned. It should be noted, in passing, that there is hardly a rule laid down in any of the classes that has not been questioned by one or more courts.

Class (1). Where it is clear that a court has no power, under the law, to render a particular judgment under any circumstances, the judgment is, doubtless, void and subject to collateral attack. Under this division appear to fall Armstrong v. Obucino, 300 Ill. 140, 133 N. E. 58, involving an order of sale of land without redemption; (contra, Moore v. Jeffers, 53 Iowa 202, 4 N. W. 1084); Wright v. Atwood, 33 Idaho 455, 195 P. 625, involving an order authorizing a guardian to mortgage his ward's estate, where he was under no circumstances authorized to do so; Bigelow v. Forest, 9 Wallace 339, 19 L. ed. 696, where the court acted under the provisions of a particular statute and condemned the fee of land, when only a life estate was authorized to be condemned; Barnes v. Lumber & Hardware Co., 67 Mont. 481, 216 Pac. 335, where the court granted a lien on a threshing machine, not authorized under any circumstances; Cushman v. Paving Co., 220 Fed. 857, 135 C. C. A. 289, where this general rule is stated. Under this head also seems to fall People v. Burke, 72 Colo. 486, 212 Pac. 837, 30 A. L. R. 1085, where it was held that a court had no power to enforce a contract regulating the election of directors of a corporation contrary to the provisions of a statute, and where it appeared that no election contrary to statute could have been ordered in any case, without reference to the particular contract; People v. Carrington, 5 Utah 531; 17 Pac. 735, where a court commissioner was held to have no authority whatever to punish for contempt. Other illustrations may be found in Freeman, supra, sec. 354. To the rule of this class should also, probably, be referred the statement of the court in Smith v. Black, 231 Mo. 681, 693, 132 S. W. 1129, 1132:

''Where the constitution or statute absolutely prohibits a court from doing a particular act, then the order or judgment of the court made or rendered in violation thereof is absolutely void for want of jurisdiction and may be assailed in a collateral proceeding.''

The case will again be referred to later, where the application of the foregoing statement is very much limited. Bailey, Jurisdiction, sec. 29, says: ''No court is or can be competent to pronounce a sentence and give judgment in open and palpable violation of a positive statute, and a judgment thus given is simply void.'' See also In Re Wooley's estate, 96 Vt. 60, 117 Atl. 370, where the court substantially says that the authority to render a particular judgment, means that orders or judgments which the court has not the power under any circumstances to make or render, are void. But this construction is certainly not accepted by courts generally.

Apropos the Missouri case above cited, it is interesting to note the observations made by Mr. Justice Holmes of the Supreme Court of the United States in the cases of Faultleroy v. Lum, 210 U. S. 230, 52 L. Ed. 1039, 28 Sup. Ct. 641, and Burnet v. Alvarez, 226 U. S. 145, 57 L. Ed. 159, 33 Sup. Ct. 63. In the former case he says:

''No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the other only to the duty, of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise without consideration; but it has power to do it, and if it does, the judgment is unimpeachable, unless reversed. Yet a statute could be framed that would make the power, that is, the jurisdiction, of the court dependent upon whether there was a consideration or not. Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its

power, is a question of construction and common sense. When it affects a court of general jurisdiction, and deals with a matter upon which that court must pass, we naturally are slow to read ambiguous words as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule of law by which the court should decide.''

And in the second of the above cases he said:

''When a court has general jurisdiction to try the question whether the alleged right exists, the rules that determine the existence of the right ordinarily govern the duty only of the court, not its power. Its judgment that the right is established cannot be impeached collaterally by proof that the judgment was wrong.''

Class (2). Where a court enters a judgment or awards relief clearly beyond the prayer of the complaint or the scope of its allegations, the excessive relief is, at least in default cases, void and open to collateral attack. This appears to be the rule announced by most of the courts, though there is conflict of authority on this proposition. See notes to 11 L. R. A. N. S. 803, and 11 Ann. Cas. 348, 15 R. C. L. 854. Under this class fall many of the cases now being analyzed, including: Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L. R. A. N. S. 803, 11 Ann. Cas. 348; Cushman v. Paving Co., 220 Fed. 857, 135 C. C. A. 289; Russell v. Shurtleff, 28 Colo. 414, 65 Pac. 27, 89 A. S. R. 216; Newman v. Bullock, 23 Colo. 217, 47 Pac. 379; Gile v. Wood, 32 Idaho 752, 188 Pac. 36; Petition of Furness, 62 Cal. App. 753, 218 Pac. 61; Munday v. Vail, 34 N. J. L. 418; Standard Sav. etc. Assn. v. Anthony etc. Co., 62 Okla. 242, 162 Pac. 451, L. R. A. 1917 D. 1029; Johnson v. Miller, 50 Ill. App. 60; Charles v. White, 214 Mo. 187, 112 S. W. 545, 127 A. S. R. 674, 21 L. R. A. N. S. 481; Waldron v. Harvey, 54 W. Va. 608, 46 S. E. 603, 102 A. S. R. 959; Burr v. Davis, 155 Minn. 456, 193 N. W. 943, 194 N. W. 379. See also Miller v. Prout, 33 Idaho 709, 197 Pac. 1023.

This rule is, however, not inconsistent with the rule, though interwoven with it, that jurisdiction of the court does not—as most of the courts hold—depend on the sufficiency of a pleading. 34 C. J. 154, 293, 452; 33 C. J. 1133, 15 C. J. 797; State v. Kusel, 29 Wyo. 287, 296, 213 Pac. 367, and a judgment cannot, ordinarily at least, be attacked collaterally, because the complaint did not state facts sufficient to constitute a cause of action, if it contained sufficient matter to challenge the attention of the court as to its merits. - 34 C. J. 560; Note 1916 E. p. 316; North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 256; 219 Pac. 561, 566. Many cases to this effect, where the petition affirmatively showed the want of a cause of action, will be cited later. We shall not attempt to discuss the inter-relation of these rules, except to say that the want of allegations in a petiion may at times be the reason of the fact that the resulting judgment is outside of the issues. See Mason v. Kansas City C. R. Co., 58 Kan. 817, 51 Pac. 284; Consolidated E. S. Co. v. Trust Co., 50 N. J. Eq. 93, 24 Atl. 229. And further, the majority of courts appear to hold that where a judgment in a criminal case is based on an information or indictment fatally defective, habeas corpus will lie. See discussion of this question in State v. Kusel, supra.

Class (3). There must be due mode of procedure in each case. This is true in regard to obtaining jurisdiction of the person, in personal actions, as is illustrated in Anthony v. Kasey, 83 Va. 338, 5 S. E. 176, 5 A. S. R. 277, where a judgment was rendered against a surety upon mere citation; by Ex parte Yarborough, 110 U. S. 651, 4 S. Ct. 152, 28 L. ed. 274, where a conviction without indictment by a grand jury was held void; by Cook v. Boulter (Wyo.), 234 Pac. 1101, 236 Pac. 245, where an order vacating a judgment, after notice upon a party's attorney, instead of after service upon the party himself, was held to be a nullity. See also Knickerbocker Trust Co. v. Oneonta etc. Co., 201 N. Y. 379, 94 N. E. 871. We are not dealing with that class of cases at present. But the principle goes further. The mode

of procedure, after jursidiction of the person is obtained, must be in accordance with law, and a clear violation thereof, if fundamental, vitiates the judgment, and subjects it to collateral attack where that is apparent on the face of the record proper. This is illustrated by Blanchard v. Bryan, 83 Okla. 33; 200 Pac. 444, cited by counsel for relator, where a refusal to grant a trial by jury in a case of indirect contempt, was held to make the judgment void; by Grannis v. Superior Court, 146 Cal. 245, 79 Pac. 891, 106 A. S. R. 23, where the court entered a final decree of divorce, without previously entering an interlocutory order required by statute.

Class (4). If the measure of a court's authority depends upon and is limited by statute, a judgment that, by the face of the record proper, is shown not to be in substantial compliance with mandatory provisions of the statute, or contrary to the limitations or conditions precedent therein expressed, is void and subject to collateral attack. 15 R. C. L. 854; Freeman, supra, sec. 354; Black, Judgments, sec. 242. To this class of cases belong Doey v. Howland, 224 N. Y. 30, 120 N. E. 53, holding that where a commission granted workmen's compensation to one engaged in a maritime contract, the order was void, the commission not being authorized to grant compensation in such cases; Johnson v. McKinnor, 54 Fla. 221, 45 So. 23, 127 A. S. R. 135, 14 Ann. Cas. 186, 13 L. R. A. N. S. 874, where a deficiency judgment, authorized by statute to be entered only in a certain case, was entered in a different kind of case; Ecton v. Tomlinson, 278 Mo. 282, 212 S. W. 865, where an award of specific property as alimony was held void; Title Guaranty v. Surety Co., 84 Okla. 291, 203 Pac. 231, where the authority of a county court in releasing a surety from a guardian's bond was held to be exceeded; Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 Pac. 498, where the commission was held not to have authority to fix a special rate for future improvements. Other probate cases are Winona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac.

981; Wright v. Atwood, 33 Idaho 455, 195 Pac. 625; Winters v. Cement Co., 65 Okla. 132, 164 Pac. 965; Hancock v. Yource, 25 Okla. 460, 106 Pac. 841; Lee v. Tonsor, 62 Okla. 14, 161 Pac. 804; Jackson v. Carroll, 86 Okla. 230, 207 Pac. 735; Blanton v. Mfg. Co., 138 Ark. 508, 212 S. W. 330.

In all of these cases the court before which the original judgment was rendered, was not the final arbiter as to whether the statutory provisions were mandatory or fundamental or not; the reviewing court determined that, and any error of law, mandatory or fundamental in its nature, was apparently held to be the equivalent of want or excess of jurisdiction. These cases go far, if applied to courts of superior and general jurisdiction, in holding that any fundamental error of law appearing on the face of the record proper totally vitiates the judgment. We might, however, say, that, possibly it is sound policy not to let courts, or commissions, of inferior jurisdiction determine the law for themselves, and to hold their orders or judgments void even in collateral attack if a wrong determination of a fundamental question of law appears from the face of the record proper. And further, where a court's power is measured by the powers given by statute, public policy may demand that these powers be substantially complied with, without letting the court exercising these powers be the final arbiter on collateral attack, as to whether that has been done or not; but that these same reasons should not in all cases apply to courts that have superior and general jurisdiction in law and equity, supplemented only by statutory provisions. This would seem to be the underlying distinction between many cases, and unless some such distinction exists, many of the cases cannot be harmonized upon any reasonable hypothesis. See Jochumsen v. Bank, 3 Allen 87; Fowle v. Coe, 63 Me. 245; Tabor v. Douglas, 101 Me. 363, 64 Atl. 653; Becket v. Selover, 7 Cal. 215, 68 A. Dec. 237. In the cases cited under this class, the very law misconstrued by the court, was the law which alone was the authority of the

court to act; hence, it may be said the court is limited by it and a misconstruction thereof makes the judgment, rendered in pursuance thereof, void. This is the theory of Grannis v. Superior Court, 146 Cal. 245, 79 Pac. 891, 106 A. S. R. 23, where the court said:

"The cases holding judgments valid on collateral attack, although they may be necessarily founded upon an erroneous view of the law, are none of them cases in which the law which the court mistook was the law which vested the jurisdiction or power over the subject matter in the court. So far as they are cases involving jurisdiction of this latter class at all they are confined to instances where the jurisdiction over the subject matter is by law made to depend on the preliminary determination of a question of fact. In that event a determination of the court rendering the judgment that the facts which give the jurisdiction exist is conclusive in all collateral inquiries. * * * But where the question upon which the jurisdiction depends is one of law purely the jurisdiction over the subject matter is always open to collateral inquiry."

Here the court inferentially says that a court of superior and general jurisdiction, whose power to act in a particular case is not purely statutory, may decide a matter of law erroneously that it has jurisdiction, without necessarily subjecting such decision to collateral attack. It may be further said that the courts are not agreed in deciding cases of this kind, as will appear from some of them cited later.

Class (5). At times where the res or right, attempted to be adjudicated, was not before the court, a judgment in relation thereto has been held to be void. Thus rights to property which was not a part of a decedent's estate can not be adjudicated, it is held, in administering the estate. Glover v. Brown, 32 Idaho 426, 184 Pac. 649. So where title was in the United States, the rights thereto could not, it is held, be adjudicated in a suit between individuals. Laramie National Bank v. Steinhoff, 11 Wyo. 290, 71 Pac.

992, 73 Pac. 209. We have not been able to classify these cases to our satisfaction. The latter case has been pressed upon our attention, but it is clearly distinguishable from the case at bar. In that case the court had no authority whatever to enter upon the adjudication of the title, while in the case at bar the court had the right to determine what should be done with the liquor—either give it to the claimant or order it to be destroyed.

Class (6). Some of the cases hold that where the record on its face shows that a judgment is based upon a void cause of action, the latter is absolutely void. Under this heading falls, apparently, Miller v. Madigan, 90 Okla. 17, 215 Pac. 742, where the court quieted title based on a deed, executed in violation of the federal statutes, but pursuant to an order of the probate court; Blacksher v. Northrop, 176 Ala. 190, 57 So. 743, 43 L. R. A. N. S. 454, where a judgment based on a void will was held to be void. See to the contrary some of the cases hereinafter mentioned, and 33 C. J. 554; also Mayo v. Foley, 40 Cal. 281; Van Fleet, Collateral Attack, sec. 236; Moore v. Martin, 38 Cal. 428; Walker v. Lyon, 3 Pen. & W. (Pa.) 98.

Class (7). Cases involving validity of laws.

Most of the courts hold that a petitioner on habeas corpus will be released if the law or ordinance under which he is held in a criminal case is unconstitutional or void for other reasons. But a conflict exists in the authorities. 29 C. J. 35-38. That is true also to some extent in civil cases. A note in 39 L. R. A. 449, after reviewing the cases involving constitutional questions, concludes:

"The conclusion seems plain that the courts have quite generally, although not universally, regarded constitutional questions as essentially different from other questions to be decided and have in numerous cases held in substance that a wrong adjudication of a constitutional question renders the judgment an entire nullity, even when the jurisdiction of the court to decide the question, provided it shall

decide correctly, is unquestioned. Yet while this seems to be the necessary foundation for these decisions, the courts have not treated it so. The result is an unsatisfactory condition of the subject.''

Class (8). Criminal cases in general.

Many courts seem to be inclined in criminal cases to treat an erroneous decision of a fundamental question of law as depriving the court of jurisdiction to proceed further in the case or as being the equivalent of excess of jurisdiction. See 19 Central Law Journal, 102. Thus where an information or indictment is fatally defective, relief may be had in many cases on habeas corpus. 29 C. J. 43. See discussion of that subject in State v. Kusel, 29 Wyo. 287, 297, 213 Pac. 367. See also 29 C. J. 34, 35, on the holding where an act does not constitute a crime. Inasmuch as the judgment attacked in the case at bar is essentially civil in its nature, we shall not investigate criminal cases in detail, except to say that the rule appears to be well settled that if a court has no authority to impose a particular sentence in a particular criminal case, such sentence is in excess of jurisdiction. Black on Judgments, sec. 258.

Class (9). There may be what is commonly called loss of jurisdiction as shown by Ruggles v. Superior Court, 103 Cal. 125, 37 Pac. 211; State v. Spokane Co., 31 Wash. 481, 71 Pac. 1095, cited by counsel. See also 15 C. J. 822. That situation did not arise in the case at bar, and we shall not take the time to treat further of that class of cases.

Some civil cases seem to go farther than the civil cases mentioned in the foregoing classes. Such seems to be the case of Chicamauga Trust Co. v. Lonas, 139 Tenn. 228, 201 S. W. 777, L. R. A. 1918 D. 451; Stansbury v. Inglehart, 9 Mackey (D. C.) 134, and Love v. Blauw, 61 Kan. 496, 48 L. R. A. 257, 78 A. S. R. 334, 59 Pac. 1059, holding that though a court has jurisdiction of cases in partition, it has no power to partition a tract of real estate between life tenant and remainderman; that the court has no right to take jurisdiction of a case where the pleadings disclose the

foregoing title. See cases note L. R. A. 1918, D. 465, to the contrary. It is not illogical to draw the conclusion from the cases cited, that where a petition discloses facts under which plaintiff is not entitled to the relief asked, then a judgment based thereon is void. Indeed it has been laid down as a broad proposition that where the face of the record discloses a fundamental error of law, the judgment is void. Thus it is said in Re Evans, 42 Utah 282, 130 Pac. 217:

"A judgment not supported by sufficient pleadings must fail. So must also a judgment which is beyond the pleadings and the findings. So, too, must a judgment fall for other errors of law apparent on the face of the record, such as showing the judgment or the methods by which it was obtained to be at variance with the forms and practice of the court or contrary to well-recognized principles and fundamentals of the law. A fact apparent from the mandatory record showing that fundamental law was disregarded in the establishment of the judgment will render it null and void for all purposes. And a judgment founded upon such a record is subject to both direct and collateral attack, and will sua sponte, be noticed by courts and acted upon by them without regard to the wishes or the relation of the parties named upon the record."

On the other hand that an error of law, even though fundamental and appearing on the face of the record, does not necessarily make a judgment void is indicated by many authorities. 33 C. J. 1079; 34 C. J. 558; 16 R. C. 33, Note 9, Freeman, supra, sec. 357, says:

"Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law. It will not avail to say that another court might or undoubtedly would have decided the case differently, for the conclusiveness of the judgment where the court had jurisdiction of the issues before it is not destroyed be-

cause it may take a different view than some other court would take of the law governing the controversy, or contrary to law as expressed in the decisions of the supreme court, or the terms of a statute.''

In Boyd v. Roane, 49 Ark. 397, 414, 5 S. W. 704, the court says that misconstruction or even disobedience of the plain provisions of law in the exercise of jurisdiction once rightly acquired, does not make the judgment void. To the same effect is Schultz v. Sanders, 38 N. J. Eq. 154, 156.

We have already seen that a judgment based upon a pleading in civil cases which fails to state a cause of action does not, ordinarily, make the judgment void. For instance, it was held in Mengel v. Mengel, 145 Iowa 737, 120 N. W. 72, 122 N. W. 899, that the absence of an allegation in a divorce petition that the petition is made in good faith, is not a jurisdictional defect, though it is mandatory under the statute. In such a case, of course, the petition could have been amended in order to show the requisite facts, and the presumption being that the court proceeded regularly, it might well be presumed that perhaps proof of the requisite facts was made. We might say in passing that this rule disposes, of course, of the contention made by counsel for relator herein that the petition for the return of the property had to show that the petitioner was the owner thereof, aside from the fact that he, being in possession of the property, was prima facie owner thereof, and further, aside from the fact that by a liberal construction of the petition, it may be gathered therefrom, as we think, that petitioner was such owner. The situation is somewhat different where the petition affirmatively shows that the law does not permit a recovery under the facts as alleged, if true. It may, of course, be argued that the petitioner may have made erroneous statements, and that facts which actually warranted the court, under the law, were in fact proven. But it may be doubted that we should indulge in any such presumption in the face of positive facts alleged, when in

fact no amendment was made. Nevertheless, the courts have held in such a case, that the trial court, at least if of superior and general jurisdiction, has the power and authority to determine, whether the facts stated, in view of the law, constitute a cause of action and warrant recovery. There is, of course, not much room for construction of the allegations of the petition in that kind of a case, as in many others. The court must rather decide at the very beginning, whether the law authorizes it to grant relief under the facts alleged. In other words, such a case presents a case of a construction of the law, rather than of facts, and an erroneous decision as to the law has many times been held to be within the power of the court, making such decision voidable but not void, at least in cases where the law does not positively prohibit the court from granting relief in such cases.

In Ex parte-Henshaw, 73 Cal. 486, 15 Pac. 110, a case close in point here, the petitioner was, in a proceeding in the superior court, ousted from the office of police judge. Not vacating the office, he was adjudged guilty of contempt and he thereupon brought a writ of habeas corpus. It was claimed that the petitioner could not be adjudged guilty of contempt because the judgment ousting petitioner from said office was void, for the reason that the statute creating the particular office of police judge had been repealed. The court had evidently thought that the law had not been repealed. The error of law, if any, accordingly appeared on the face of the proceedings. The supreme court says:

"But in deciding properly or erroneously that a statute purporting to create an office has been or has not been repealed, it neither abrogates nor does it create the office. It construes the law; and mistake of law in that regard no more invalidates its judgment than does a mistake of law in any other particular. It decides the question of law because its grant of jurisdiction authorizes it to decide all questions of law involved in the issues it has power to try.

Except with respect to statutory limitations of the powers of the court itself, a court is authorized to treat statutes as but part of the law, and an erroneous interpretation of a statute, or an erroneous ruling as to the operative force of one of two statutes, apparently conflicting, no more affects the jurisdictional power to render a judgment than does an erroneous interpretation of the unwritten law.''

In State ex rel. v. Drandhurst, 156 Mo. 457, 56 S. W. 1094, 70 Am. St. Rep. 538, it was held that notwithstanding the absence of a law permitting a minor to be naturalized, a judgment of a court of competent jurisdiction naturalizing a minor, though erroneous, is not void and cannot be attacked collaterally, the age of the minor appearing of record. In the case of Crew v. Platte, 119 Cal. 139, 51 Pac. 38, it appears that the judgment pronounced by the court was not in accordance with law, because it had admitted a will that created a perpetuity in violation of the statute. The court while stating the rule that the tribunal pronouncing a judgment must have jurisdiction (a) over the person, (b) over the subject matter, and (c) to pronounce the judgment rendered, nevertheless held the order not subject to collateral attack. In Ryans Estate, 177 Cal. 598, 171 Pac. 297, the court's judgment was not in accordance with law, in admitting a will void under the statute. The judgment was held not void, even though the invalidity of the will might appear on the face of the record. The court approves the dissenting opinion in Blacksher v. Northrop, 176 Ala. 190, 57 So. 743, 42 L. R. A. N. S. 454, as follows:

''The idea that a decree in a proceeding in rem pronounced by a court competently jurisdictioned to so pronounce is absolutely void because it plainly disobeys the law is, it seems to me a startling proposition, the consequences of which will be, if applied, profound, widespread and recurrently surprising. Res judicata, as referred to collateral assailment, becomes a shadow merely, instead of a

wholesome and imperative necessary doctrine, if such idea finally and fully prevails.''

To the same effect is Richardson v. Beau (Tex. Civ. App.) 246 S. W. 1096. But some of the courts, as we have seen, take a contrary view. See collection of cases holding both views in note to 42 L. R. A. N. S. 454.

The case of Anderson v. Carr, 65 Hun. 179, 19 N. Y. S. 992, affirmed without opinion in 137 N. Y. 565, 33 N. E. 338, was an action in equity to establish the validity of a will, and the will was declared valid. This judgment was held not void, although the appellate court subsequently held that a court of equity had no power to establish a will. That the judgment was contrary to law appeared, of course, on the face of the record proper. The court said:

''The plaintiff thought he could maintain this action. He was wrong, but he had a right to be wrong. He submitted his claim to the court which had general jurisdiction in law and in equity. It is not pretended that there is any other tribunal before which the plaintiff should have brought this suit. If the question was a proper one for litigation, there. must be some court in which the question could be litigated and a judgment rendered in such litigation, while unreversed, must, though erroneous, stand on the same footing as any other judgment not subject to collateral attack.''

In Smith v. Black, 231 Mo. 681, 132 S. W. 1129, already referred to, it appears that the statute prohibited the sale of real estate of a decedent for less than three- fourths of the appraised value thereof in certain cases. A violation of this statute appeared on the face of the record, but the order approving the sale was held to be immune from collateral attack, the court stating the rule to be that where the constitution or statute authorizes a court to do a particular thing —here to order the sale of real estate—but at the same time prohibits the court from doing that until certain other things stated are performed, or where the power of the

court to act is subject to certain limitations named, then the judgment of the court rendered in violation of the things stated, or contrary to the limitations named, is not void for want of jurisdiction, but voidable only. In Rivard v. Railroad Company, 257 Mo. 135, 165 S. W. 763, it appears that the Supreme Court of that state had early established the rule that a court of equity had no authority to reform a married woman's deed. The trial court, however, disregarded this rule and reformed the deed of a married woman. The supreme court held that the judgment of the trial court was not subject to collateral attack, saying:

"The failure to distinguish between 'the erroneous exercise of jurisdiction,' and 'the want of jurisdiction' is a fruitful source of confusion and errancy of decision. * * * A court is possessed of jurisdiction when it is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it has jurisdiction of the persons of the parties to the suit. The judgment of the trial court lacking either of these essentials is open to any form of attack. It follows that the judgment of a court of general jurisdiction with the parties before it and with power to grant or refuse relief in the case presented, though contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most an erroneous exercise of jurisdiction and as such impregnable to an assault in a collateral proceeding."

In Adams Express Company v. Bradley, 179 Ky. 238, 200 S. W. 340, a case closely in point here, the question was whether or not a criminal statute applied to express companies. The trial court held that it did, and rendered judgment fining the company. Upon issuance of execution the company sought to enjoin the sheriff, claiming that the face of the record showed the judgment to be void, since the statute did not apply to it. The Supreme Court, however, held that no collateral attack was permissible, saying in part:

"Even if it should be conceded that section 1575, Kentucky Statutes, which defines and denounces the offense of which the express company was convicted in each of the several prosecutions against it, is not, as claimed by its counsel, applicable to a common carrier such as it is, a question not now decided, that fact would not render the judgment in question void, but only erroneous, because resulting from a mistake of law committed by the trial court. It is a well settled rule that an error of law does not furnish ground for collateral attack on a judgment. If a court is confronted with a question it has a right to decide, its erroneous judgment will not be subject to collateral attack, whether the mistake concerned grew out of a misapplication of the common, statutory or constitutional law. Obviously, the circuit court had jurisdiction of the subject matter of the prosecution against the express company as well as of its corporate person, and therefore, possessed the power to determine whether the offense denounced by the statutes, supra, was one that could be committed by a common carrier. So, if in passing upon the defense of the express company and holding that the statute was applicable to it, the court committed an error, it could have had no other effect than to render the judgment erroneous. To declare otherwise would violate the broad principle so essential to the maintenance of good government that where a court has jurisdiction over the person and the subject matter no error, in its exercise can make the judgment void. Indeed it may be said that when a court has jurisdiction to decide a case, it has also jurisdiction to commit error, however great or prejudicial the error."

To the same effect are Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787, In Re Gregory, 219 U. S. 210, 55 L. Ed. 184, 31 Sup. Ct. 143; Ex parte Watkins, 3 Pet. 193, 7 L. Ed. 650; Hallock v. Dominy, 69 N. Y. 238.

In People v. Lazensky, 208 N. Y. 435, 102 N. E. 556, it appears that the lower courts had held that the action of

a board of supervisors in designating a newspaper·was void, holding the action judicial. The case had been reversed, on appeal, (not the present case) on the theory that the action of the board was administrative. Nevertheless the judgment of the trial court was held not to be void and not subject to collateral attack. In Fisher v. Hepburn, 48 N. Y. 41, the question in a proceeding to determine claims to real estate, was as to whether it should have been special or by an action under the Code. An erroneous determination of the law was held not to subject it to collateral attack. In Morgan v. Haley, 107 Va. 331, 58 S. E. 564, 13 L. R. A. N. S. 732, 122 A. S. R. 846, 13 Ann. Cas. 204, it was held that a court of equity has power to decide the point of law whether the case made by the bill in participation was within its jurisdiction, or whether the action was one in ejectment. In Cierlinski v. Rys, 225 Pa. 312, 74 Atl. 172, a case close in point here, a widow asked for an award to her of real estate, the right of which, however, was lost, under the statute, if she remarried. The fact of her remarriage appeared on the face of the proceedings, still the judgment making the award to her was held not subject to collateral attack, the court saying:

"The petitioner averred that she was the widow of the decedent and as such entitled to the property claimed. This averment made it the duty of the orphan's court to take cognizance of and to decide her cause, and it was the only court that could hear and determine it. Although she set out a fact that raised a doubt as to the validity of her claim, she was nevertheless entitled to be heard. A finding as to that fact by a court having jurisdiction of the subject matter, however erroneous, was conclusive on collateral attack."

In Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146 Pac. 203, L. R. A. 1916 E. 303, the complaint, upon which the judgment of the case was founded, sought to enforce a lien, which it was claimed, had no existence under

the laws of the state. The lien, however, was established, and the judgment was held not to be subject to collateral attack; the court in part saying:

"Superior courts are courts of general jurisdiction. They have jurisdiction in cases involving the foreclosure of all mortgages and liens. Such jurisdiction may not be subject of any controversy. Judgments of courts within the scope of their power to hear and determine are not void, whether right or wrong. If it was within its power to determine, the sufficiency of the Otterson claim for lien, as tested by the statutes of Arizona, its action in determining its sufficiency involved only a construction of the statutes relating to liens of laborers—a rightful exercise by the court of its jurisdiction. If the decision on the question was wrong its judgment could have been reversed on appeal; it cannot be successfully impeached collaterally. The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry; not whether its conclusion in the course of it is right or wrong."

In one of the syllabi in Bitzer v. Mercke, 111 Ky. 299, 63 S. W. 771, it is stated "that a judgment which follows the prayer of the petition is not void, although the averments of the petition affirmatively show that there is no cause of action," the court among other things stating that the question what, if any, relief, complainant was entitled to under the allegations of the petition, was necessarily presented to the court when the case was submitted, and that an error in the decision could only be corrected by appeal. The case of Staats v. Wilson, 76 Neb. 204, 124 A. S. R. 806, 107 N. W. 230, 109 N. W. 379, was a suit for partition. It affirmatively appeared from the petition that, under the law, the widow was entitled to only a dower interest in the land, but the trial court granted her a third interest absolutely. The decree was held not to be void but erroneous only. In Hagerman v. Sutton, 91 Mo. 519, 4 S. W. 73, it appears that a mar-

ried woman had mortgaged her separate property for the separate debt of her husband. In asking foreclosure of the mortgage, the petitioner also claimed a deficiency judgment against her, which was not authorized by law, but was nevertheless granted. The judgment was held not to be void, the court saying that "jurisdiction being acquired, error could not oust it, although that error consisted in granting a relief not warranted by law." In U. S. v. Morse, 218 U. S. 493, 31 Sup. Ct. 37, 54 L. ed. 1123, 21 Ann. Cas. 782, it was held that a decree of the Supreme Court of the District of Columbia for the sale of an infant's real property for purposes of investment, made with jurisdiction of the res and of the parties, is not open to collateral attack, even though the court erred in holding—the facts appearing of record—that a case had been made, either under its inherent power as a court of equity or its statutory authority; in other words, that the error of law appearing of record did not show an excess of jurisdiction or usurpation of authority.

In the case of Clayton v. Hurt, 88 Tex. 595, 32 S. W. 876, a justice of the peace was held to have general jurisdiction of certain cases; that he had the right to determine whether notice given in forcible entry and detainer was sufficient as a matter of law, and that no matter how erroneous his decision might be, though appearing on the face of the record, his judgment is not void. This principle was approved in Crow v. Vanness, (Tex. Civ. App.) 232 S. W. 539. In Forest Lumber Co. v. Mining Co., (Mo.) 222 S. W. 398, the court said that—

"manifestly the judgment of a court cannot be treated as a nullity in a collateral proceeding merely because the judgment was given on an unconstitutional statute. In such a case the judgment would be valid until reversed or set aside, whether the decision of the point was right or wrong."

It is manifest from the foregoing citations that courts in general are not yet prepared to go to the extent of holding

that an error of law, fundamental to the rights of the parties though it be, is necessarily the equivalent either of want or of excess of jurisdiction. On the contrary, a court of superior and general common law jurisdiction, as are district courts of this state, whose powers are only added to, or limited by, statute, must be held, if jurisdiction exists of the person and of the general class of actions to which the proceedings in question belong, to have authority to decide, as against a collateral attack, both questions of law as well as of fact that may arise in the particular case, unless it is a case where the rule, as it may be established and laid down in the state, under one or more of the classes as above specified is clearly violated. It may be that other or different classes, making exceptions to the general rule, should hereafter be established or added. It is clear that the case at bar does not fall within any of the classes enumerated. The judgment that is attempted to be attacked collaterally herein, is a judgment ordering the return of property, hence a judgment in a civil proceeding, even though it grows out of a criminal case, and we can think of no reason why the general rule above stated should not be applied in the case at bar, and the judgment attacked must be held to be binding on the parties thereto, including the petitioner who was but the representative of one of the parties, in the absence of an appeal therefrom. Particularly should this be true since the parties to the proceeding below appeared, raised the same points that are presented here, made no objection to the jurisdiction of the court, but on the contrary asked the court to exercise its jurisdiction by asking a decision against the petitioner for the return of the liquor, whereupon a solemn adjudication was made contrary to the contentions that are now made. Blackstone v. Nelson, 151 Ga. 706, 108 S. E. 114; Spade v. Bruner, 72 Pa. 57.

We stated advisedly that the general rule should apply unless one of the exceptions is *clearly* violated. For we are not prepared to reject what Van Fleet calls the correct principle. He says in his work on Collateral Attack, page 96:

"Hence the true rule as applied to the proceeding of any judicial tribunal when attacked collaterally is, if the jurisdictional matters are *colorable,* the proceeding is not void. Under our system of jurisprudence no judicial tribunal can apply to any other for official advice. It must rely upon itself, and as it is its sworn duty to take jurisdiction of every matter presented, *if the law has authorized it to do so,* it must pass upon its own power in each case so presented."

Again in sec. 1 of the same work, he says:

"And as no one would think of holding a judgment of the court of last resort void if its jurisdiction were debatable or even colorable, the same rule must be applied to the judgments of all judicial tribunals. This is the true theory of judicial action when viewed collaterally. If any jurisdictional question is *debatable* or *colorable,* the tribunal must decide it; and an erroneous conclusion can only be corrected by some proceeding provided by law for so doing, commonly called a direct attack."

The foregoing was approved in St. Lawrence Boom & Mfg. Co. v. Holt, 51 W. Va. 352, 41 S. E. 351, 359, where the court, after quoting from section 1 of Van Fleet's work, says:

"These considerations and authorities lead to the conclusion that in a case in which it is questionable or debatable whether a court has jurisdiction, and it erroneously decides that it does have, its judgment and decree is erroneous and voidable only, and subject to correction only by proceedings in the court which rendered it, or by an appellate court, and is not void or open to collateral attack."

And the same court, in Simmons v. Yoho, 92 W. Va. 703, 115 S. E. 851, again approving of the foregoing rule, said:

"In the present case under discussion we think the jurisdiction of the circuit court was at least colorable, and it had jurisdiction to pass on that question, hence its decree was not void."

The same theory is hinted at in other cases: e. g. Roth v. Bank, 58 Okla. 604, 160 Pac. 505, 511. We should, however, state, that when in sections 90 to 129 of the foregoing work Van Fleet discusses the question of misconstruction of statutes, he disagrees with about 58 out of the 103 cases cited. About half of these are cases from courts of inferior or limited jurisdiction, and a number more are criminal cases. It may be that had the learned author been content to apply his theory to courts of superior and general jurisdiction, it might have found a more ready acceptance and might have been oftener cited with approval. It is clear beyond peradventure of a doubt that our conclusion herein is correct, if the rule stated by the author is the true one. And if we test the case by what Mr. Justice Holmes said in Fauntleroy v. Lum, supra, we arrive at the same result. Our statutes, governing the return of liquor, are at best but rules of substantive law by which the court should decide, rather than limitations upon its power. This should be apparent from the decision in State v. Romano, supra, without taking the space to analyze the statutes here.

It follows, from what we have said, that the motion to quash the alternative writ issued herein should be sustained and the petition dismissed. It is so ordered.

POTTER, C. J., and KIMBALL, J., concur.