KNICKERBOCKER TRUST COMPANY, Plaintiff, *v.* ONEONTA, COOPERSTOWN AND RICHFIELD SPRINGS RAILWAY COMPANY et al., Defendants.

CHARLES F. SHELLAND et al., Appellants; HARRY W. BEAN et al., as Committee of Reorganization of the ONEONTA, COOPERSTOWN AND RICHFIELD SPRINGS RAILWAY COMPANY, Respondents.

Equity — receiver of insolvent railroad corporation — receivers' certificates — courts of equity have power to authorize the issuing of receivers' certificates only for the expenses of preserving, maintaining and operating the railroad.

There is no general power in a court of equity to adjudicate the rights of persons not parties to the action or to displace or subordinate the rights of persons not parties to the action, or to displace or subordinate their liens or other property interests even upon notice.

The power to issue receivers' certificates paramount to the liens of strangers to the suit is of a strictly limited nature.

Receivers' certificates may be issued for the maintenance and preservation of a railroad, for its repair, the purchase of necessary rolling stock and the payment of taxes under which the rolling stock might be seized and the operation of the road crippled or prevented, but cannot be issued so as to take priority over existing liens, to prevent a default in the interest on mortgage bonds and a consequent foreclosure and loss to the stockholders and creditors of the company, and an order authorizing such an issue and declaring such certificates to be prior to all other liens and claims is in excess of the power of the. court and may be attacked collaterally.

The bondholders are not estopped by the receipt by the trustee of the defaulted interest from funds raised on the certificates.

*Knickerbocker Trust Co.* v. *O., C. & R. S. R. Co.*, 138 App. Div. 687, affirmed.

(Argued March 15, 1911; decided March 28, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 17, 1910, which reversed an order of Special Term in a proceeding to determine a claim for priority of payment out of a fund arising from a sale in foreclosure of certain receivers' certificates.

The facts, so far as material, are stated in the opinion.

*Henry C. Henderson* for appellants. Bean and the reorganization committee have no interest in the proceeds of the sale of the mortgaged property, from which the claims in question are asked to be paid. They are not aggrieved, and could not maintain the appeal in the court below. (*Bullard* v. *Kenyon*, 78 Hun, 26; *Hyatt* v. *Dusenbury*, 8 N. Y. S. R. 713; 106 N. Y. 663; *Bryant* v. *Thompson*, 128 N. Y. 426; *Hobart* v. *Hobart*, 86 N. Y. 636; *Ross* v. *Wigg*, 100 N. Y. 243.) The general rule is that persons purchasing property under the authority of an erroneous judgment or decree acquire rights which cannot be divested by a subsequent reversal of the judgment or decree. (*Bank of United States* v. *Bank of Washington*, 6 Pet. 8; *Grignon's Lessee* v. *Astor*, 2 How. [U. S.] 319, 341; *Voorhees* v. *Bank of United States*, 10 Pet. 469; *Gray* v. *Brignardello*, 1 Wall. 627; *Simmons* v. *Saul*, 138 U. S. 440; *Shaw* v. *Ritchie*, 136 U. S. 519; *Mohr* v. *Mannierre*, 101 U. S. 417; *Lovett* v. *German Reformed Church*, 12 Barb. 67; *Langley* v. *Warner*, 3 N. Y. 327; *Parkhill Co.* v. *Herriott*, 41 App. Div. 324; *Lester* v. *Lawyers' Surety Co.*, 50 App. Div. 181; *Thaxter* v. *Thain*, 100 App. Div. 488.) The Knickerbocker Trust Company, the trustee for the bondholders, having received the proceeds from the sale of the receivers' certificates, and having paid the same to the bondholders, both the trustee and the bondholders are estopped from questioning the validity of the order. under which the money was obtained. (*Mills* v. *Hoffman*, 92 N. Y. 181; *Chipman* v. *Montgomery*, 63 N. Y. 221; *Matter of Peaslee's Will*, 73 Hun, 113; *Kenyon* v. *Kenyon*, 6 Misc. Rep. 584; *Conti-*

*nental Bank* v. *Nat. Bank*, 50 N. Y. 575.) The holders of the receivers' certificates are entitled in law and in equity to the return of the moneys advanced by them upon the faith of such certificates. (*Utica Ins. Co.* v. *Scott*, 19 Johns. 1; *Pratt* v. *Short*, 79 N. Y. 437; *B. G. L. Co.* v. *Claffy*, 151 N. Y. 25; *L. Ins. Co.* v. *Clason*, 162 N. Y. 306; *Daniels* v. *Tierney*, 102 U. S. 415; *U. S.* v. *Hodson*, 76 U. S. 395.)

*Ralph W. Gwinn* for respondents. The Appellate Division declared these judgment creditor receivers' certificates to be illegally granted and intended to reserve no right or equity in favor of the certificate holders superior to that of the mortgage creditors in the distribution of the proceeds of sale in foreclosure. (*Townsend* v. *O., C. & R. S. R. Co.*, 88 App. Div. 208; *Morgan's Co.* v. *Texas C. Ry. Co.*, 137 U. S. 171.) The court assumes no general equitable jurisdiction over vested mortgage interests when it appoints a receiver of a corporation in sequestration proceedings for the benefit of judgment creditors. (*U. S. T. Co.* v. *N. Y., W. S. & B. Ry. Co.*, 101 N. Y. 478; *Whitney* v. *N. Y. & A. R. R. Co.*, 32 Hun, 164; *Matter of N. P. & W. R. R. Co.*, 26 Misc. Rep. 324; 42 App. Div. 622; *Matter of Coleman*, 174 N. Y. 373; *Matter of Hamilton Park Bank*, 1 App. Div. 375; *Matter of Binghamton Genl. Elec. Co.*, 143 N. Y. 261; *Davidson* v. *J. G. C. Co.*, 63 App. Div. 366; *Fordyce* v. *Omaha R. R. Co.*, 145 Fed. Rep. 544; *K. T. Co.* v. *T. M. & W. P. R. R. Co.*, 133 App. Div. 285; Beach on Receivers, § 223.) The position of the mortgage trustee and bondholders is the same as if no creditors' receiver had been appointed and the company had operated under its own officers. (*F. L. & T. Co.* v. *B. & M. Tel. Co.*, 148 N. Y. 315; *A. T. Co.* v. *Dana*, 128 Fed. C. C. A. 209; *M. Trust Co.* v. *Tonawanda*, 103 N. Y. 245; *K. Trust Co.* v. *T. M. & W. P. Ry. Co.*, 133 App. Div. 285; *Morgan's Co.* v. *T. C. Ry. Co.*, 137 U. S. 171; *Mercantile Tel. Co.* v. *K. C. R. R. Co.*, 40 App. Div. 141.) Equity will not aid Shelland to do something already adjudged to be inequitable and unjust. (*Taylor* v. *P. & R.*

Co., 9 Fed. Rep. 1; *Cort's Application,* 7 Pa. Dist. Rep. 536; *Morgan's Co.* v. *T. C. Ry. Co.,* 137 U. S. 171; *Met. Trust Co.* v. *Tonawanda R. R. Co.,* 103 N. Y. 245; *Edwards* v. *Kearzey,* 96 U. S. 595.) The displacement of mortgage liens without the consent of the mortgage creditor to pay the debts of a general creditors' receiver is contrary to law and equity. (*Phinizy* v. *Augusta Ry. Co.,* 62 Fed. Rep. 771; *Union Trust Co.* v. *Monticello,* 63 N. Y. 311; 2 Machen on Law Incorp. § 2403; Beach on Receivers, § 553; *Morgan's Co.* v. *Texas C. Ry. Co.,* 137 U. S. 171; *Seilles* v. *Union Mfg. Co.,* 50 W. Va. 208; *Barnard* v. *Union Trust Co.,* 159 Fed. Rep. 620; *Snow* v. *Winslow,* 54 Iowa, 220; *N. Y. Security Co.* v. *Louisville Ry. Co.,* 102 Fed. Rep. 382; *Porter* v. *Bessemer Steel Co.,* 120 U. S. 649; *Kneeland* v. *American Loan & Trust Co.,* 136 U. S. 89; *F. L. & T. Co.* v. *Detroit Ry. Co.,* 71 Fed. C. C. A. 29; *Gregg* v. *Met. Trust Co.,* 197 U. S. 183; *Union Trust Co.* v. *Ill. Midland Ry. Co.,* 117 U. S. 434.) The bondholders are not estopped from resisting general creditors' claims to priority in the distribution of the proceeds of the foreclosure sale. (*Townsend* v. *O., C. & R. S. Ry. Co.,* 88 App. Div. 208; *Baker* v. *Life Ins. Co.,* 43 N. Y. 283; *Tompkins* v. *Hartford Co.,* 22 App. Div. 280; *Mills* v. *Hoffman,* 92 N. Y. 181; *Chipman* v. *Montgomery,* 63 N. Y. 721; *Matter of Peaslie,* 73 Hun, 113; *Kenyon* v. *Kenyon,* 6 Misc. Rep. 584; *Matter of Soule's Will,* 22 Abb. [N. C.] 243.) Shelland loaned money relying on an invalid order. Money loaned on a mistake of law cannot be recovered, and no lien can be based thereon. (*Jacobs* v. *Morange,* 47 N. Y. 57; *Doll* v. *Earl,* 59 N. Y. 638; *Newburgh Sav. Bank* v. *Town of Woodbury,* 173 N. Y. 55.)

CULLEN, Ch. J.   The controversy is between the holders of first mortgage bonds and the holders of certain receiver's certificates over a fund in court arising from a sale in foreclosure under the mortgage upon the railroad. A judgment creditor of the railroad company, after issue of execution and its return unsatisfied, brought an action in the Supreme Court

to sequestrate the property under the Code of Civil Procedure.   (§§ 1784 *et seq.*, now art. 6 of General Corporation Law, Consolidated Laws, ch. 23.)   At that time the trustee under the mortgage had instituted an action for its foreclosure based on default in the payment of the interest coupons, which action was still pending, but it does not appear that any receiver had been appointed therein.   Thereafter, and in July, 1903, the receiver appointed in the sequestration action, upon notice to the trustee under the mortgage, applied for and the court granted an order authorizing the issue of receiver's certificates not to exceed $35,000, out of the proceeds thereof to pay the overdue interest on the mortgage bonds and the fees and expenses of the trustee incurred in the foreclosure suit, " thereby to prevent a default and to prevent the trustee from declaring the whole principal sum to be due and a consequent foreclosure for such principal and loss to the stockholders and creditors of said company."   Such certificates were declared by the order to be a lien on the lands, premises, franchises and property of the company prior to all other liens and claims thereon whatever, except such other certificates as the receiver might thereafter be authorized to issue.   On this application the trustee appeared specially to object to the jurisdiction of the court.   After it had failed in its opposition, it appealed to the Appellate Division from the order made by the Special Term, and that order was reversed.   (88 App. Div. 208.)   Meanwhile, and before the order of the Appellate Division, the certificates had been issued and disposed of to various parties who paid the receiver the amounts represented by them.   In the present proceeding the matter was referred to a referee, who reported in favor of the superiority of the claims of the certificate holders.   On appeal the Appellate Division has reversed that order and awarded the fund to the bondholders.   The appeal from that order is now before the court.

The argument of the learned counsel for the appellants is that, though the order of the Special Term authorizing the issue of the certificates was reversed on appeal, nevertheless

the rights acquired under it by third parties in good faith were not affected by the reversal. He relies on the general rule, often declared, that a judgment or decree of a court which has jurisdiction of the person and subject-matter is binding until reversed and cannot be attacked collaterally. This general principle may be conceded, and I shall assume, for the argument, that the powers of the court in a sequestration action are as great as those possessed by it in an ordinary equity action, but the general rule quoted is subject to this qualification, which obtains not only in criminal cases (*Ex parte Lange,* 18 Wall. 163 ; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559), but also in civil cases (*Kamp* v. *Kamp,* 59 N. Y. 212; *Bigelow* v. *Forrest,* 76 U. S. 339; *Day* v. *Micou,* 85 id. 156), that the court must have power to render the judgment made by it. There is no general power in a court of equity to adjudicate the rights of persons not parties to the action, or to displace or subordinate their liens or other property interests even upon notice. Ordinarily to accomplish such a result an action or proceeding must be brought against the parties affected and the issues therein tried and disposed of in the usual manner. The power to issue receiver's certificates paramount to the liens of strangers to the suit is of a strictly limited nature and the theory on which the existence of power at all is based is clearly stated in two decisions of the United States Supreme Court. In *Wallace* v. *Loomis* (97 U. S. 146) that court said : " The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot, at this day, be seriously disputed. It is part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands." (p. 162.) In *Union Trust Co.* v. *Illinois Midland Ry. Co.* (117 U. S. 434) it was said by the court, speaking of a railroad in the hands of a receiver : " It

is to be preserved for those entitled to it.  This must be done by the hands of the court, through officers.  The character of the property gives character to the particular species of preser- vation which it requires.  Unimproved land may lie idle, with only payment of taxes.  Improved property should be rented.  Movable property that is not perishable may be locked up and kept; but if perishable, it must be sold, by way of preservation.  A railroad, and its appurtenances, is a peculiar species of property.  Not only will its structures deteriorate and decay and perish if not cared for and kept up, but its business and good will will pass away if it is not run and kept in good order.  Moreover, a railroad is a public con- cern.  The franchises and rights of the corporation which constructed it were given not merely for private gain to the corporators, but to furnish a public highway; and all persons who deal with the corporation as creditors or holders of its obligations, must necessarily be held to do so in the view, that, if it falls into insolvency and its affairs come into a court of equity for adjustment, involving the transfer of its franchises and property, by a sale, into other hands, to have the purposes of its creation still carried out, the court, while in charge of the property, has the power, and, under some circumstances, it may be its duty, to make such repairs as are necessary to keep the road and its structures in a safe and proper condition to serve the public.  Its power to do this does not depend on consent, nor on prior notice." (p. 455.)

This also is the doctrine of the courts of our state.  In fact the whole doctrine is taken over from the Federal courts and the two cases quoted from the United States Supreme Court are cited and followed by this court in *Vilas* v. *Page* (106 N. Y. 439).  It thus appears that the power is merely incidental to the possession by the court of some property or fund and can be exercised only for the care, maintenance and preservation of such property or fund, and not for the benefit or advantage of any particular claimant to the fund, except as such claimant may profit by the maintenance and preservation of the thing itself.  The *res* or thing in the possession of the court in this

case by its receiver was the railroad.   Receiver's certificates might have been issued for the maintenance and preservation of the railroad, for its repair, the purchase of necessary rolling stock, and the payment of taxes under which the rolling stock might be seized and the operation of the road crippled or prevented.   Had the application been made to issue certificates for any of such purposes, and the trustee given notice, it is probable that it would have been concluded by the determination of the court on the necessity of issuing certificates.   The order made in this case, however, showed on its face that the certificates were to be issued for no such object, but to prevent the foreclosure and loss to the stockholders and creditors of the railroad.   Probably payment of the defaulted interest and avoidance of a foreclosure would benefit the stockholders and creditors of the company, and so also would the issue of certificates, the proceeds thereof to be paid to creditors, benefit the creditors, but neither would benefit or enhance the value of the railroad or save it from depreciation to the extent of a dollar, and the railroad was the only *res* in court.   Nor would it contribute at all to the proper operation of the railroad, the thing in which the public was interested.   The effect of the order was simply to pay bondholders by appropriating against their will part of their own property for the purpose.   The order of the court was, therefore, not only erroneous, but void as in excess of its powers; and though the court in granting the order necessarily decided that it was within its powers, still the order may be attacked collaterally.   (*Kamp* v. *Kamp, supra.*) Persons purchasing the receiver's certificates were bound to take notice of his authority to issue the same as a paramount lien.   (*Union Trust Co.* v. *Illinois Midland Ry. Co., supra.*)

It is claimed the bondholders are estopped by the receipt by the trustee of the defaulted interest from funds raised on the certificates.   I think not.   The trustee did not consent to obtaining the money for that purpose by the issue of certificates, but opposed it.   The money was in the hands of the company or its receiver, and as long as the trustee was offered

payment it could not question the source from which it came. It may be the certificate holders were willing to lend the receiver money even without the security of a paramount lien on the property. A refusal to receive payment on a tender might possibly have discharged the lien of the mortgage to the extent of the interest unpaid. Indeed the receipt of the money was practically compulsory; the bondholders were forced to surrender a cause of action shortly to become due, to wit, foreclosure for the whole principal sum secured by the mortgage, and to leave the railroad for another six months in the hands of adverse parties.

The order of the Appellate Division should be affirmed, with costs.

VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; HAIGHT, J., absent.

Order affirmed.