Continental & Commercial Trust & Savings Bank et al., Appellees, v. Muscatine, Burlington & Southern Railroad Company et al., Appellees; Chicago, Rock Island & Pacific Railway Company et al., Appellants.

**RECEIVERS:** Settlement of Claims—Displacement of Liens.  Railway
1  companies which knowingly permit the receiver of an insolvent railway to collect inter-line freight charges may not, as interveners in an action to foreclose a mortgage on the receiver's road, have their claims established as prior to judgment liens on the naked showing that said freight charges were used by the receiver *in operating* his railway.

**APPEAL AND ERROR:** Exceptions—Failure to Except—Effect.  Fail-
2  ure to have exception to a judgment properly noted precludes review on appeal.  (See Book of Anno., Vol. 1, Sec. 11536.)

**CONSTITUTIONAL LAW:** Due Process—Displacing Liens.  The right
3  of a judgment creditor of an insolvent railway to due process on the issue whether the receiver shall continue the operation of the road and whether the operating expenses shall be given priority over existing judgments is not satisfied by giving the creditor a hearing on the issue whether such priority shall be ordered as to expenses already incurred without any authorizing order therefor.  (See Book of Anno., Vol. 1, Const., Art. 1, Sec. 9, Anno. 101 *et seq.*)

Headnote 1:   33 Cyc. p. 574 (Anno.)   Headnote 2:   3 C. J. p. 940.
Headnote 3:   12 C. J. p. 1223 (Anno.)

Headnote 2:   2 R. C. L. 93.

*Appeal from Muscatine District Court.*—D. V. Jackson, Judge.

November 16, 1926.

Railroad mortgage foreclosure.  Interveners appeal from a decree denying their claim of priority for alleged operating liabilities during receivership over ˙the lien of prior judgments

obtained in actions for personal injuries. One of the judgment creditors appeals from denial of priority of lien on the railroad property in counties other than that in which the original judgment was recovered, but in which transcripts of his judgments were docketed.—*Affirmed on both appeals.*

*J. G. Kammerer, J. G. Gamble, A. B. Howland, Hughes, Taylor, O'Brien & Faville,* and *Thompson & Thompson,* for appellants.

*Clapp, Richardson, Elmquist, Briggs & McCartney, H. O. Weaver, Lane & Waterman, J. F. Devitt,* and *Nichols, Tipton & Tipton,* for appellees.

MORLING, J.—On July 1, 1916, the defendant railroad company mortgaged its property to the defendant American Trust Company. On July 1, 1919, a mortgage was made to the plaintiff, which, by arrangement between the parties interested, was given priority over the former mortgage. On November 20, 1920, Nellie Guthrie recovered in Louisa County a judgment against the railroad company for personal injuries. On November 27, 1920, Howard Kelly recovered in Louisa County a judgment against the railroad company for personal injuries, and later transcribed it to Muscatine and Des Moines Counties. On October 6, 1921, Cornelius B. Johnson recovered in Muscatine County a judgment against the railroad company for workmen's compensation. On November 30, 1921, P. W. Keefover recovered in Muscatine County a judgment against the railroad company for personal injuries.

1. RECEIVERS: settlement of claims: displacement of liens.

On May 20, 1921, in an action brought by J. F. Cullen against the railroad company, a receiver was appointed, and was directed to take possession of all of the railroad company's property and operate the railroad. On October 13, 1921, the present suit was brought, to foreclose the 1919 mortgage. The receiver appointed in the Cullen suit, Cullen, the American Trust Company, and the judgment lien creditors were made defendants. The American Trust Company filed a cross-bill for foreclosure of its mortgage. On May 8, 1923, decree of foreclosure of both mortgages was entered, by which the proceeds of

the foreclosure sale were ordered to be applied, first, to payment
of unpaid taxes; second, to costs; third, to a fund to make good
diversion of current earnings; fourth, to the judgment liens;
fifth, and subsequently, to payment of the mortgage indebted-
ness. Modifications of the decree on petition of various parties
were made, but they are immaterial to this discussion. On Janu-
ary 8, 1924, a number of railroad companies filed petitions of
intervention in the foreclosure suit, claiming of the receiver
balances for inter-line freight collections, per diem car charges,
and freight claims, and asked that the same be established as
operating liabilities, and as such, given priority of payment out
of the proceeds of the sale of the corpus of the estate, superior
to the judgment and mortgage liens. The railroad property was
located in the three counties named: Muscatine, Louisa, and Des
Moines. As a basis for determining the amount applicable to
the payment of liens recorded in the respective counties, the
court apportioned the fund among the three counties on a basis
which is not complained of, and ordered the Johnson and Keef-
over judgments paid out of the amount apportioned to Musca-
tine County, and the balance of that amount to be paid to the
receiver. The court ordered the amount apportioned to Louisa
County to be used in payment first of the Guthrie judgment, and
the balance, as far as it would go, on the Kelly judgment. He
ordered the balance of the fund, namely, that apportioned to Des
Moines County, to be paid to the receiver. The court thus denied
to Kelly a lien on account of his transcripts of judgment on the
funds in the counties in which the transcripts were filed. This
denial is evidently based on Section 11606, Code of 1924, which
provides:

"A judgment against any railway * * * for an injury to
any person or property, and any claim for compensation under
the Workmen's Compensation Act for personal injuries * * *
shall be a lien upon the property of such corporation or copart-
nership within the county where the judgment was recovered or
in which occurred the injury for which compensation is due."

Priority of lien of judgment for personal injuries and
workmen's compensation over prior mortgages is given by Sec-
tion 11607.

The mortgagees have not appealed.

We need not discuss Kelly's appeal, further than to say that

interveners urge that no exception was taken by Kelly to the judgment appealed from. The judgment itself shows no excep-

2. APPEAL AND ERROR: exceptions: failure to except: effect.

tion. Kelly, in amendment to abstract, makes the statement that he did except, but does not claim that any exception was noted on the judgment entry or elsewhere. Interveners deny that any exception was taken, and no record of any exception by Kelly is pointed out to us. His appeal, therefore, cannot be further considered.

On interveners' appeal, it is to be noted that the only parties to the suit in which the receiver was appointed were the plaintiff therein, Cullen, and the defendant railroad company. None of the proceedings in that suit are before us, except the order appointing receiver. The order recites that the cause came on for hearing on the petition of the plaintiff and the answer of the defendant upon application for appointment of receiver. The record does not show that the plaintiff or the cross-petitioner or any other party asked for the appointment of a receiver in the present foreclosure suit, or the continuance of the existing receivership. The judgment lien holders set up their judgments, and asked that they be given priority. They did not ask for a receiver. The railroad company answered by a general admission. The receivership was not referred to in any of the pleadings until the petitions of intervention were filed. The petitions of intervention prayed for the establishment of interveners' claims, and for priority, as has been noted. It will be borne in mind that the intervention was not in the receivership suit, but in the subsequent foreclosure suit. The interveners' resistance to one of the applications for modification of decree asserted that the judgment lien holders were parties to the Cullen case, but this statement is not sustained by the record. It does not appear that any of the lien claimants participated in any wise in the receivership proceedings, or that they had any knowledge of how the receivership was being conducted, or that there was any expectation of a deficiency of operating income, or of making any charge for operating expenses against the corpus of the property.

The railroad company could not by its own act displace the statutory liens held by the judgment creditors. A railroad company, while it retains its franchise, owes to the state and the public the duty of operating its road. This duty should be taken

into account by the court on an application for a receivership, and consequently operation of a railroad may be ordered under circumstances in which operation of a purely private enterprise by a receiver would not be ordered. Nevertheless, railroad property is private property, which cannot be subjected to unreasonable requirements or to confiscation. *Northern Pac. R. Co. v. North Dakota,* 236 U. S. 585 (59 L. Ed. 735). A railroad company cannot be compelled to retain its franchise and to continue to operate at a loss when there is no reasonable prospect of future profitable operation. *State ex rel. Brown v. Beaton,* 190 Iowa 216; *Bullock v. Florida,* 254 U. S. 513 (65 L. Ed. 380), and cases cited; *Erie R. Co. v. Board of Public Utility Com.,* 254 U. S. 394 (65 L. Ed. 322); *Brooks-Scanlon Co. v. Railroad Commission,* 251 U. S. 396 (64 L. Ed. 323); *Colorado v. United States* (U. S.), 46 Sup. Ct. Rep. 452, 70 L. Ed. —; *Wolff Packing Co. v. Court of Industrial Relations,* 262 U. S. 522 (67 L. Ed. 1103).

On an application for a receivership, the court will not require operation at a loss; and if, after operation by a receiver is undertaken, it is shown to be a losing venture, such operation should be discontinued, unless the expenses are guaranteed. *Atlantic Tr. Co. v. Chapman,* 208 U. S. 360 (52 L. Ed. 528); *Farmers' Loan Co. v. Oregon P. R. Co.,* 31 Ore. 237 (38 L. R. A. 424, 65 Am. St. 822, 48 Pac. 706); *Illinois Steel Co. v. Ramsey,* 100 C. C. A. 323 (176 Fed. 853). Lien holders, by asking for a receivership and operation of the property for their benefit, or for the preservation and benefit of the property, may thereby bind the corpus of the property, as against themselves, for the payment of operating expenses. *Kneeland v. American L. & Tr. Co.,* 136 U. S. 89, and cases below cited.

As said in *Kneeland v. American L. & Tr. Co.,* 136 U. S. 89, 97:

"* * * the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens."

It is said in *Fosdick v. Schall,* 99 U. S. 235, 251:

"The possession taken by the receiver is only that of the court, whose officer he is, and adds nothing to the previously existing title of the mortgagees. He holds, pending the litigation, for the benefit of whomsoever in the end it shall be found

to concern, and in the meantime the court proceeds to determine the rights of the parties upon the same principles it would if no change of possession had taken place. * * * The mortgagee has his strict rights which he may enforce in the ordinary way. If he asks no favors, he need grant none. But, if he calls upon a court of chancery to put forth its extraordinary powers and grant him purely equitable relief, he may with propriety be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity. The appointment of a receiver is not a matter of strict right. Such an application always calls for the exercise of judicial discretion; and the chancellor should so mold his order that, while favoring one, injustice is not done to another. If this cannot be accomplished, the application should ordinarily be denied. * * * There is nothing to show that the current income of the receivership or of the company has been in any manner employed so as to deprive this creditor of any of his equitable rights. In short, as the case stands, no equitable claim whatever has been established upon the fund in court. *Prima facie* that fund belongs to the mortgage creditors, and the presumption which thus arises has not been overcome."

It is said by Judge (now Mr. Justice) Sanford, in *Mercantile Trust Co. v. Tennessee Cent. R. Co.*, 291 Fed. 462, 467:

"A court of equity administering railroad property either in a mortgage foreclosure case or in a creditors' suit, is charged with the duty of conserving and operating the property, so far as can practically be done, for the benefit of both public and private interests, and in the exercise of this duty of conservation and operation may, in a proper case, make such repairs, replacements, and betterments and incur such operating expenses as are purely essential to such results, and make the certificates issued for money borrowed by the receivers for such purposes a lien upon the corpus of the property, and, so far as necessary, prior to existing liens. * * * The authority to disturb existing liens for the purpose of securing receivers' certificates should, however, be exercised with great caution and 'carried no further than actually necessary to attain the desired result.' *American Brake Co. v. Pere Marquette Railroad*, supra, 205 Fed., at page 19, 123 C. C. A. 322. It does not, it is true, depend upon consent or prior notice, where the circumstances are judicially equivalent to

prior notice. *Union Trust Co. v. Illinois Midland Co.*, supra, 117 U. S., at page 456, 6 Sup. Ct. 809, 29 L. Ed. 963. And in the absence of prior notice, it is sufficient if the prior lien holder be given full opportunity to be heard, on evidence, before the order becomes effective, as to the propriety of the expenditures and of making them a first lien. *Union Trust Co. v. Illinois Midland Co.*, supra, 117 U. S., at page 456, 6 Sup. Ct. 809, 29 L. Ed. 963; *American Brake Co. v. Pere Marquette Railroad*, supra, 205 Fed., at page 19, 123 C. C. A. 322. While the court may, under some circumstances, charge the property with receivers' certificates in advance of the prior lien holders' being made parties, it cannot deprive them of their priority of lien without giving them their day in court; and when they are brought before the court, they become entitled to contest the necessity, validity, and effect of the certificates as fully as if such questions were then for the first time presented for determination. If it then appears that the certificates ought not to have been made a charge upon the property superior to the prior lien, the contract rights of the prior lien holders must be protected; while, on the other hand, if it then appears that the court originally did what ought to have been done, even if the prior lien holders had been before it when the issuance of the certificates was authorized, the property should not be relieved from the charge made upon it, in good faith, for its protection and preservation. *Union Trust Co. v. Illinois Midland Co.*, supra, 117 U. S., at page 460, 6 Sup. Ct. 809, 29 L. Ed. 963. And see *Wallace v. Loomis*, 97 U. S. 146, 24 L. Ed. 895. * * * It is clear that the prior lien holder, when brought before the court upon notice of an application for the enlarged security, is entitled to contest, upon evidence, the necessity and validity of the lien then sought to be given the certificates; and that, by analogy to the rule of the *Illinois Midland Co.* case, if it then appear that the court would not have been authorized originally, even upon notice, to have made the certificates a charge upon the property superior to the prior lien, the contract rights of the prior lien holders should be protected and such additional security denied the certificate holders. As already stated, the authority of the court, in discharging its duty in conserving and operating the railroad property, to make receiver's certificates a lien, when 'necessary,' upon the corpus of

the property prior to existing liens, extends no further than is actually necessary to attain the desired result.''

The power of the court to authorize receivers to raise money necessary for the preservation and management of the property and charge it as a lien on the corpus in preference to prior liens ''is, undoubtedly, a power to be exercised with great caution; and, if possible, with the consent or acquiescence of the parties interested in the fund.''   *Wallace v. Loomis*, 97 U. S. 146, at 163.   See, also, *Illinois Steel Co. v. Ramsey*, 100 C. C. A. 323 (176 Fed. 853) ; *Birmingham Tr. & Sav. Co. v. Atlanta, B. & A. R. Co.*, 300 Fed. 173.   While a court of equity, taking possession of and operating railroad property through a receiver, in a sense undertakes that operating debts shall be paid, this implied undertaking is not without its limitations.   The court should, in the first place, as has been shown, make the determination final only after hearing those whose prior rights may be prejudiced by its action. It should be careful to ascertain whether operation will pay expenses and will be in the interest of conservation, rather than conducive to dissipation of the property.   The end in view in appointing a receiver is the conservation of the property and the rights of the persons interested therein and in the income therefrom, and expenditures for any other purpose or end is, as to owners or lien holders not parties to the suit or not estopped, beyond the power of the court.   Persons dealing with the receiver must, at their peril, take notice of his authority and the jurisdiction of the court.   *Knickerbocker Tr. Co. v. Oneonta, C. & R. S. R. Co.*, 201 N. Y. 379 (94 N. E. 871).   In this case, the interveners allowed the receiver to collect inter-line freight balances, apparently to considerable amounts, and to use the proceeds in defraying operating costs.   In effect, the receiver, without any authority from the court, unless it was the implied authority to conduct the business according to the custom of the company, appropriated inter-line freight balances to paying operating expenses; or, to state it otherwise, by that means raised funds to conduct operations.   The only evidence as to the nature of the claims is the testimony of the receiver that it was ''inter-line freight balances and per diem and freight claims,'' including items paid for damages to freight chargeable to receiver.   It is not shown that the interveners made any inquiry into the authority of the receiver, or relied upon any action by

the court or upon any action or non-action of prior lien holders', or made any investigation as to whether operating income was equal to operating expenses. There is no evidence that the lien holders had any knowledge even of the receivership; but, if it may be assumed that they knew of it as a matter of public information, still there is not the slightest evidence that they had any reason to suspect the existence of the claims of interveners or of like claims, or that the property was being operated at a loss. As has been stated, they were not parties to the appointment of the receiver, or to any of his operations. They were not brought into court upon the interveners' claims until after the claims had fully accrued. There is no ground for concluding that the credit extended by interveners to the receiver has benefited the corpus of the estate. The case does not make out in favor of interveners any equity superior to the prior legal rights of the lien holders, nor any basis for asserting estoppel. For the court to take possession of the property and operate it and the business at the expense of the holders of prior liens upon the property, without notice to them or opportunity to be heard, would obviously be wanting in due process.

The hearing on the petitions of intervention in this suit is not the equivalent of prior notice. It does not appear that any resistance was made to receivership operation, or that the parties 3. **CONSTITUTIONAL LAW: due process: displacing liens.** then before the court were interested in making resistance. The receiver testified that at no time were there sufficient funds to pay operating expenses. The interveners' claims in large part are the equivalent of claims for payment for their money used in operation. If opportunity had been given to lien holders, we cannot assume that they would not have successfully resisted the application for operation by receiver. If the application had been to borrow money for operating expenses, that of itself would have been a warning of possible loss. It is clear that a hearing on an application to charge to the corpus the loss after it has been fully sustained, does not serve the purpose of opportunity to resist in advance the incurring of the loss. *Union Tr. Co. v. Illinois Midland R. Co.*, 117 U. S. 434.

The fact that two of the judgments were rendered after the receiver was appointed, is not made the subject of discussion.

The judgment on both appeals is—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.