**In the Matter of the Child Known as TRG, a minor.**

**JHL, Appellant (Respondent),**

v.

**BMG, Appellee (Petitioner).**

**Nos. C-83-1, C-83-2.**

Supreme Court of Wyoming.

June 14, 1983.

Kenneth R. Marken, Casper, for appellant.

Robert Monteith, Casper, for appellee.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE, and BROWN, JJ.

ROSE, Justice.

This appeal concerns a case in which the district court judge, over the objection of the natural mother, entered judgments

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case

pursuant to order of the court entered June 13, 1983.

awarding temporary—and then, as a sanction, permanent—custody of a 19-month-old child to BMG, a putative father whom the court found to be the parent of the child. These findings, holdings and judgments were made and entered contrary to the statutes provided for such matters. This being so, the court acted in excess of its jurisdiction and the judgments are therefore void.

We will reverse.

## FACTS

On April 12, 1982 the appellee BMG, putative father, filed a petition under the Wyoming Uniform Parentage Act, §§ 14-2-101 through 14-2-120, W.S.1977,[1] for the purpose of adjudicating the existence of a father/child relationship between himself and TRG, the minor daughter of JHL, the appellant-respondent mother and for the further purpose of deciding who should have custody of the child. Appellee was not the presumed natural father of the child, as contemplated by § 14-2-102, W.S. 1977.[2]

At the time the petition was filed, TRG was approximately 19 months old and had—since birth—resided with JHL, her natural mother. On April 13, 1982, a notice of setting issued from the district court scheduling an "informal" hearing, under § 14-2-108, W.S.1977, for 9:00 a.m., May 10, 1982, the purpose of which was, according to the notice, to conduct the "informal hearing as to the question of paternity." It was further provided that the petitioner's motion for temporary custody would be heard immediately thereafter.

Appellant mother's first attorney received the notice of setting and mistakenly informed his client that the hearing was scheduled for 10:00 a.m. rather than 9:00 a.m. on May 10. Appellant appeared with her attorney at 10:00 a.m. that day, only to

1. Section 14-2-104(c), W.S.1977 provides:

    "An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under W.S. 14-2-102 may be brought by the child, the department of health and social services, the mother or personal representative of the child, the personal representative or a parent of the mother if the mother has died or is a minor, *a man alleged or alleging himself to be the father,* or the personal representative or a parent of the alleged father if the alleged father has died or is a minor." (Emphasis added.)

2. Section 14-2-102, W.S.1977 reads:

    "Presumption of paternity; rebuttal thereof.
    "(a) A man is presumed to be the natural father of a child if:
    "(i) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred (300) days after the marriage is terminated by death, annulment or divorce or after a decree of separation is entered by a court; or
    "(ii) Before the child's birth, he and the child's natural mother attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid; and:
    "(A) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage or within three hundred (300) days after its termination by death, annulment or divorce; or
    "(B) If the attempted marriage is invalid without a court order, the child is born within three hundred (300) days after the termination of cohabitation; or
    "(iii) After the child's birth, he and the child's natural mother married or attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid; and:
    "(A) He has acknowledged his paternity of the child in writing filed with the state office of vital records services; or
    "(B) With his consent, he is named as the child's father on the child's birth certificate; or
    "(C) He is obligated to support the child under a written voluntary promise or by court order; or
    "(iv) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child.
    "(b) A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two (2) or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. A presumption is rebutted by a court decree establishing paternity of the child by another man."

learn that a judgment had been authorized and was entered, holding and providing that BMG was the natural father of the minor child and that it was in the child's best interest that temporary custody be vested with him. The Sheriff of Natrona County was ordered to deliver the child to BMG, the putative father.

No record of these proceedings was kept as required by statute. § 14–2–108, W.S. 1977.[3] Therefore, for purposes of this appeal, this court is forced to proceed upon the assumption that there is no testimony or evidence supportive of the judgment which emanated from the proceedings of May 10, 1982.

The attorney for the mother filed motions to vacate, stay, and amend the judgment, and to vacate the award of temporary child custody. On May 28, 1982 appellant's motions were brought before the district court but were denied on the grounds that the appellant had failed to produce evidence showing there to be a factual basis upon which she might prevail if the judgment were vacated, and for the further reason that she had yet to deliver the child to the petitioner in accordance with the judgment of May 10, 1982.

Meanwhile, on May 13, 1982 the putative father filed a petition to cite the mother for contempt of court for having failed to deliver the child to him. Further, he had his lawyer employ the services of a private investigator to conduct surveillance of the child's mother and the members of her family, all for the purpose of determining the whereabouts of the child.

On June 16, 1982, the little girl was seized from her babysitter by the Natrona County Sheriff and delivered to the putative father. At a hearing on June 24, 1982, the district court judge found appellant in contempt of court for "willfully disobeying" the order of May 10, 1982 and ordered that, prior to any final hearing in the matter, she would have to pay the putative father's attorney's fees and investigator's fees in the amounts of $1,645.12 and $2,638.69, respectively.

3. See discussion of this statute infra this opinion.

On May 18, 1982 appellee's counsel served interrogatories upon the mother's attorney. The first lawyer's services were terminated on June 1, 1982 whereupon he forwarded the interrogatories to the mother's second attorney. The answers to the interrogatories had not been filed by August, in consequence of which failure to respond the attorney representing the putative father filed a motion to compel discovery. On September 14, 1982 a hearing was held via telephone conference call with the court together with the lawyers for both the petitioner and the respondent, at which time the mother was directed to answer the interrogatories no later than September 24, 1982. Despite her full cooperation, the mother's lawyer failed to serve the answers to interrogatories upon appellee's counsel as ordered by the court. During a second conference call with the court and opposing counsel on November 12, 1982, the mother's attorney confessed that the fault for failing to answer the interrogatories was entirely his and that his client was absolutely blameless. Unimpressed with this state of affairs, the district court judge thereupon entered a default against the appellant and awarded permanent custody of the child to the appellee as a sanction for her failure to answer the interrogatories. A final order was filed December 16, 1982.

On December 23, 1982 appellant's *third* attorney, who in all respects has pursued the best interests of his client and who ably brings this appeal in the mother's behalf, filed a motion to set aside the default judgment. A notice of setting was issued by the clerk of the district court on December 28, setting the motion for hearing on January 27, 1983. In order to perfect her appeal from the court's final order filed December 16, 1982, appellant filed a notice of appeal on December 30, 1982.

At the motion hearing of January 27, 1983, the district judge held that the child's mother was prohibited from taking an appeal from the court's order filed December 16, 1982 while the motion to set aside the default judgment was pending, for the rea-

son that her filing of the notice of appeal had the effect of depriving the district court of jurisdiction. The district court went on to hold that it would hear no arguments and take no evidence in support of the appellant's Rule 60(b), W.R.C.P.[4] motion and dismissed the motion by order dated February 1, 1983. Present at the hearing were the appellant and the attorney who failed to file the response to interrogatories. This attorney would have testified, had he been given the opportunity, that the mother fully cooperated with him in preparing answers to the interrogatories, not once, but twice, and that through his sole neglect the answers had not been filed and served upon the putative father. Had it been permitted, the testimony would have further shown that appellant had no knowledge of the continuing controversy concerning the interrogatories despite her repeated and mostly unsuccessful attempts to contact her lawyer with respect to the status of her case.

A second notice of appeal was thereafter filed, notifying of the appellee's intention to appeal the trial court's order of February 1, 1983.

The appellant identifies the issues on appeal as follows:

"A. Whether a putative father in a paternity action filed under the Wyoming Uniform Parentage Act is entitled to an award of temporary custody?

"B. Whether the Appellant was properly found in criminal contempt of court and properly ordered to pay Appellee's costs as a result of her failure to obey an order of the lower court which was void *ab initio*?

"C. If temporary custody may be awarded to a putative father in a paternity action, did the District Court abuse its discretion in awarding temporary custody in this case to the Appellee and/or in failing to grant Appellant's Motion to Vacate, Stay, or Amend the temporary custody award?

"D. Whether the District Court erred in entering a default judgment against the Appellant by which permanent custody of the child was transferred to the Appellee as a sanction for failure to answer Appellee's interrogatories?

"E. Whether the filing of a Notice of Appeal by Appellant removed jurisdiction from the District Court to hear Appellant's Motion to Set Aside Default Judgment?"

We will reverse and direct that the district court will forthwith enter its order, the burden of which will be that the child TRG is to be returned to her mother at once. All trial court orders and judgments, commencing with the court's "Judgment"

---

4. Rule 60(b), W.R.C.P. provides:

"*Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.*—On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is vased has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within one (1) year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding as provided in sections 3–3801 [§ 1–16–401], 3–3805 [repealed, § 1, ch. 188, Laws 1977], and 3–3810 [§ 1–16–408], W.C.S.1945, or to grant relief to a party against whom a judgment or order has been rendered without other service than by publication as provided in section 3–3802 [§ 1–16–402], as amended. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

of May 10, 1982, are hereby held to be void and of no force and effect.

### The Order of May 10, 1982

As noted above, on April 12, 1982 the putative father BMG petitioned the court under the Wyoming Uniform Parentage Act, supra, asking the court to adjudicate him to be the father of the minor child TRG and to award him custody. The judge signed a notice setting May 10, 1983 at 9:00 a.m. as the appointed time when an "informal" hearing would be had "in accordance with W.S. § 14–2–108," to decide the paternity question and to hear arguments on the appellee's motion for temporary custody.

The hearing was set for 9:00 a.m., but the mother's attorney thought it was scheduled for 10:00 a.m., and even though he so informed the court, this made no mitigating impression on the judge and that day the following "Judgment" was signed and entered upon the record:

### "JUDGMENT

"THIS MATTER coming before the Court on Petitioner's Motion for Temporary Custody, and the Petitioner appearing in person, and with his attorney of record, and the Guardian ad Litem appearing, but the respondent failing to appear, the Court proceeded to hear the matter; after hearing the matter and reviewing the file, the Court FINDS:

"1. That the Court has personal jurisdiction of the parties and subject matter by virtue of the respondent's residence in Natrona County, Wyoming, with said minor child.

"2. That respondent has failed to respond to or appear at the hearing on Petitioner's motion for temporary custody.

"3. That the Petitioner is the natural father of [TRG], a minor child; respondent is the natural mother of said minor child.

"4. That it would be in the best interests of said minor child to award the temporary care, custody and control of said minor child to the Petitioner during the pendency of this action.

"5. That the Natrona County Sheriff's Department should make every reasonable effort to forthwith deliver said minor child to the Petitioner.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that:

"1. Petitioner, [BMG], should be, and he hereby is, declared to be the natural father of [TRG], a minor child.

"2. That the care, custody and control of [TRG], a minor child, should be, and it hereby is, awarded to Petitioner, [BMG] during the pendency of this action.

"3. That the Natrona County Sheriff's Department should be, and it hereby is, directed to use every reasonable effort to forthwith deliver said minor child to the Petitioner.

"Dated this 10th day of May, 1982.

"BY THE COURT:

"[signed] Dan Spangler
"JUDGE

"APPROVED AS TO FORM:

"[signed] Robert A. Monteith,
"ROBERT A. MONTEITH,
"Attorney for Petitioner

"[signed] Richard H. Peek,
"RICHARD H. PEEK,
"Guardian ad Litem"

The hearing with respect to which the mother was notified was—as the court's notice of setting indicates—to be held in compliance with § 14–2–108, W.S.1977. The relevant part of that section provides:

"*Informal hearing; refusal of witnesses or parties to testify; testimony of physician.*

"(a) As soon as practicable after an action is brought to declare the existence or nonexistence of the father and child relationship, *an informal hearing shall be held.* The court may order that the hearing be held before a referee. The public is barred from the hearing. *A record of the proceeding shall be kept.* (Emphasis added.)

Even though this section of the statute provides that "a record of the proceeding

shall be kept," this was not done. Further, the statute gives the court no authority either to award temporary custody of a minor child to the petitioning party or to enter an order declaring a parent and child relationship. The most that can come from an informal "pretrial hearing" is a "recommendation for settlement" as provided by § 14–2–111, W.S.1977 which—*if agreed to* by the parties—could culminate in an order settling the paternity, custody and support issues, but which—*if not agreed to*—can only result in an order recommending settlement by dismissal or compromise by agreement according to the terms of the statute. The recommendation is, by statute, bound to take into account the best interest of the child in light of the factors enumerated in § 14–2–113(e).[5] The statute provides for other incidental matters.

Section 14–2–111, W.S.1977, provides:

"Recommendations for settlement; acceptance or refusal thereof; dismissal based on blood tests.

"(a) On the basis of the information produced at the pretrial hearing, the judge or referee conducting the hearing shall evaluate the probability of determining the existence or nonexistence of the father and child relationship in a trial and whether a judicial declaration of the relationship would be in the best interest of the child. *On the basis of the evaluation, an appropriate recommendation for settlement shall be made to the parties which may include any of the following:*

"(i) That the action be dismissed with or without prejudice;

"(ii) That the matter be compromised by an agreement among the alleged father, the mother and the child, in which the father and child relationship is not determined but in which a defined economic obligation is undertaken by the alleged father in favor of the child and, if appropriate, in favor of the mother, subject to approval by the judge or referee conducting the hearing. In reviewing the obligation undertaken by the alleged father in a compromise agreement, the judge or referee shall consider the best interest of the child in light of the factors enumerated in W.S. 14–2–113(c), discounted by the improbability as it appears to him of establishing the alleged father's paternity or nonpaternity of the child in a trial of the action. In the best interest of the child, the court may order that the alleged father's identity be kept confidential and may designate a person or agency to receive from the alleged father and disburse on behalf of the child all amounts paid by the alleged father in fulfillment of obligations imposed on him; or

"(iii) That the alleged father voluntarily acknowledge his paternity of the child.

"(b) If the parties accept a recommendation made in accordance with subsection (a) of this section, judgment shall be entered accordingly.

"(c) If a party refuses to accept a recommendation made under subsection (a) of this section and blood tests have not been taken, the court shall require the parties to submit to blood tests if practicable. Thereafter the judge or referee shall make an appropriate final recommendation. If a party refuses to accept the

---

**5.** Section 14–2–113(e), W.S.1977 provides:

"(e) In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall consider all relevant facts including:

"(i) The needs of the child;

"(ii) The standard of living and circumstances of the parents;

"(iii) The relative financial means of the parents;

"(iv) The earning ability of the parents;

"(v) The need and capacity of the child for education including higher education;

"(vi) The age of the child;

"(vii) The financial resources and the earning ability of the child;

"(viii) The responsibility of the parents for the support of others; and

"(ix) The value of services contributed by the custodial parent."

final recommendation, the action shall be set for trial.

"(d) The guardian ad litem of the child may accept or refuse to accept a recommendation under this section.

"(e) The informal hearing may be terminated and the action set for trial if the judge or referee finds it unlikely that all parties would accept a recommendation he might make under subsections (a) or (c) of this section.

"(f) If the scientific evidence resulting from the blood tests conclusively shows that the defendant could not have been the father, the action shall be dismissed." (Emphasis added.)

Given the facts of this case, the notice to the mother and the applicable statutes, the only orders that could have emanated from the court are:

(1) an order continuing or resetting the informal hearing and/or

(2) a contempt citation to punish respondent for her tardiness;

(3) *a recommendation* from the court which could provide:

(a) the action be dismissed and/or

(b) the matter be compromised by agreement of the parties where the parental relationship is not determined but an obligation of support for the child and/or the mother is undertaken by the putative father. The recommendation—if it provides for child support—will have taken the factors contemplated by § 14–2–113(e), supra n. 5, into account;

(c) the recommendation may include a finding which says that the alleged father voluntarily acknowledged his paternity of the child; or

(4) if the parties accept the recommendation of the court, an order will be entered consistent therewith;

(5) if the parties do not accept the court's recommendation, blood tests will be ordered, if they have not previously been taken, after which the judge (or referee) will make a final recommendation. If either party refuses to accept the final recommendation, the action will be set for trial;

(6) if the blood tests show that the petitioner ("defendant") could not have been the father, then the action shall be dismissed.

The court made no such "recommendation for settlement" as is contemplated by this section of the statute. Since none was made, the mother of course had no opportunity to accept or reject it. The record does not disclose what—if any—evidence of parenthood the court heard. We have no idea whether blood tests of the parties were or were not taken. We do not know what—if any—evidence of the child's wellbeing was made available to the judge. We *do know* that the applicable statutes were not followed in any material respect, and, once the mother had missed her May 10 court appointment by one hour (due to the fault of her attorney), she was never again given the opportunity to testify or introduce her evidence, or to refute any of the petitioner's evidence, and she was not given the opportunity to cross-examine witnesses.

■ Notwithstanding the clear directives of the statutes discussed above, the court entered its May 10 "Judgment" determining paternity and temporary custody, in violation of these statutes and, hence, that "Judgment" is void and of no force and effect.

■ At common law, a putative father could not bring an action for paternity. *A v. X, Y and Z,* Wyo., 641 P.2d 1222 (1982); *Blanton v. Warn,* Wyo., 444 P.2d 325 (1968). It must therefore be assumed that, since Wyoming's Uniform Parentage Act gives the biological father a cause of action, § 14–2–104(c), it is, therefore, in derogation of the common law. If that is so, the statutes must be strictly construed and carefully adhered to. *State v. Stovall,* Wyo., 648 P.2d 543 (1982); *Mahaney v. Hunter Enterprises, Inc.,* Wyo., 426 P.2d 442 (1967). As applied to this case, these rules say that, since common law gave the putative father no right of action but Wyoming's Uniform Parentage Act does give him a cause of action which permits him to

establish the parent-child relationship, the statutes which authorize the proceedings in such matters must be carefully and strictly followed in order to give effect to the intention of the legislature.

█ Even though the putative father has a right of action under the Wyoming Parentage Act, that right of action must be exercised in conformity with the statute, and courts will not be permitted to enlarge upon the statutory rights therein contained.

We said in *Lo Sasso v. Braun,* Wyo., 386 P.2d 630, 632 (1963):

"As stated in *State ex rel. Morrison v. Anway,* 87 Ariz. 206, 349 P.2d 774, 776, it is a universal rule that courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions."

The issue then becomes this: What is the effect of the court's acting outside the authority granted by the statute? That is, when the court so acted—which it did—was it without jurisdiction so that its May 10 order was rendered void?

In *State ex rel. Yohe v. District Court of Eighth Judicial District in and for Natrona County,* 33 Wyo. 281, 238 P. 545, 548 (1925), we said:

" 'Though the Court may possess jurisdiction of a cause, of the subject-matter and of the parties, *it is still limited in its modes of procedure and in the extent and character of its judgments.'* " (Quoting from *Windsor v. McVeigh,* 93 U.S. 274, 23 L.Ed. 914 (1876).) (Emphasis added.)

In 1 Freeman on Judgments (5th Ed.), § 354, "Judgments in Excess of Jurisdiction," the author says at p. 733:

" 'It is well settled by the authorities that a judgment may be void for want of authority in a court to render the particular judgment rendered though the court may have had jurisdiction over the subject matter and the parties.' " (Quoting from *Pyeatt v. Estus,* 72 Okla. 160, 179 P. 42, 45, 4 A.L.R. 1570 (1919).)

The text goes on to say, at pp. 733–734:
" * * * Nevertheless in the actual rendition of the judgment, the court must

remain within its jurisdiction and powers. For it is the power or authority behind a judgment, rather than the mere result reached, which determines its validity and immunity from collateral attack. A wrong decision made within the limits of the court's authority is error correctable on appeal or other direct review, but a wrong, or for that matter a correct, decision where the court in rendering it oversteps its jurisdiction and power is void and may be set aside either directly or collaterally."

At p. 735 the author says:
" * * * If the court is exercising special statutory powers, the measure of its authority is the statute itself, and a judgment in excess thereof is null and void * * *."

As to statutory authority, we said in *State ex rel. Yohe v. District Court of Eighth Judicial District in and for Natrona County,* supra, 238 P. at 550:

"If the measure of a court's authority depends upon and is limited by statute, a judgment that, by the face of the record proper, is shown not to be in substantial compliance with mandatory provisions of the statute, or contrary to the limitations or conditions precedent therein expressed, is void * * *."

We said 238 P. at 549:
"Where it is clear that a court has no power under the law, to render a particular judgment under any circumstances, the judgment is doubtless void * * *."

*Effect of a Void Judgment*

It is said in 46 Am.Jur.2d, Judgments, § 49, "Void judgments," pp. 347–349:
"A void judgment is not entitled to the respect accorded to, and is attended by none of the consequences of, a valid adjudication. Indeed, a void judgment need not be recognized by anyone, but may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. It has no legal or binding force or efficacy for any purpose or at any place. It cannot affect,

impair, or create rights, nor can any rights be based thereon.

"Although it is not necessary to take any steps to have a void judgment reversed or vacated, it is open to attack or impeachment in any proceeding, direct or collateral, and at any time or place, at least where the invalidity appears upon the face of the record. It is not entitled to enforcement and is, ordinarily, no protection to those who seek to enforce it. All proceedings founded on the void judgment are themselves regarded as invalid and ineffective for any purpose.

"In short, a void judgment is regarded as a nullity, and the situation is the same as it would be if there were no judgment. It accordingly leaves the parties litigant in the same position they were in before the trial."

We cited this rule with approval in *Wunnicke v. Leith,* 61 Wyo. 191, 157 P.2d 274 (1945) and again in *Olson v. Leith,* 71 Wyo. 316, 257 P.2d 342, 345 (1953).

In *Emery v. Emery,* Wyo., 404 P.2d 745, 749 (1965), we said:

"A void judgment is not binding. It confers no rights * * *."

This court has the power to vacate a void judgment. We said in *Emery v. Emery,* supra, 404 P.2d at 749:

"As stated in 30A Am.Jur., § 693, p. 659, the power of a court to vacate a void judgment is regarded as inherent and independent of any statutory authority. In the same text, on page 658, it is indicated that even though a void judgment is a nullity, a court will not permit it to encumber the record and will vacate the ineffectual entry thereof on proper application at any time. Also, in 49 C.J.S. Judgments § 267, pp. 480-481, it is said under or apart from statutory provisions, invalidity of a judgment void for want of jurisdiction, as distinguished from a judgment merely voidable or erroneous, is ground for vacating it—at least if such invalidity is apparent on the face of the record."

In the case at bar, the court's authority was "limited by statute," but this authority was exercised in excess of the statutorily defined limitation upon its power and, thus, in excess of its jurisdiction. Jurisdiction is the power of a court to render a particular judgment. *State ex rel. Yohe v. District Court of Eighth Judicial District in and for Natrona County,* supra; *Padlock Ranch, Inc. v. Washakie Needles Irr. Dist.,* 50 Wyo. 253, 61 P.2d 410 (1936). In consequence, all of the district court's orders and judgments are void and of no force and effect, commencing with the judgment of May 10, 1982.

TRG will be re-delivered to the custody of her mother JHL forthwith and the district court will make and enter all such orders as are necessary to give effect to the directives contained in this opinion.

Reversed.

ROONEY, Chief Justice, specially concurring.

I agree with the majority of the court that the statutory proceedings (§ 14–2–108, W.S.1977) were not followed by the district court in connection with the informal hearing held on May 10, 1982, and that the judgment resulting therefrom was void.

I also note that the judgment did not direct the mother to do anything, let alone turn the child over to the sheriff. Accordingly, the mother could not properly be held in contempt of court for disobeying the directions of the judgment.

In view of these preliminary factors, the entry of a default judgment was an abuse of discretion. It may be in the best interest of the child that its custody and control be with the putative father, but a child's well being is so paramount in these cases that those things which affect it should be determined on their merits. To allow a default judgment to stand against the mother, based on procedural impropriety for which she has no fault, is an abuse of discretion. The court could not reasonably conclude as it did in entering the default judgment and in allowing it to stand. In doing so, it acted in a manner which exceeded the bounds of reason under the circumstances. Such is an

abuse of discretion. *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

I would reverse and remand the case with instructions to vacate all orders and judgments entered therein; to enter an order returning care, custody and control of the child to the mother pending further proceedings; and to undertake proceedings pursuant to § 14–2–101, et seq., W.S.1977, at the point whereat an informal hearing is set.

I realize that I reach the same place as does the majority opinion, but I do so with a little more particularity as to the contempt order and as to the default.